## SEWALL, BY HIS NEXT FRIEND, v. GLIDDEN.

1. In 1826, the second section of the statute of frauds was the only law which provided for the registration of deeds of gift of personal property. That law required that the deed, in order to be recorded, should be acknowledged or proved in the Circuit or County Court, &c.; consequently a deed registered, upon acknowledgement or proof before the clerk when the Court was *not in session*, cannot be regarded as recorded, so as to charge a purchaser with *constructive notice* of its contents.

2. But though such a deed may not have been regularly proved and recorded, yet it may be regarded as equivalent to a parol declaration of the donor's wishes, and if the constituents of a gift *inter vivos* are shown, the donee's right becomes complete.

3. In order to pass the title to a chattel by a parol gift, at common law, there must be an *actual delivery* of the thing.

4. A special verdict should find every fact essential to the plaintiff's right of recovery in order to authorise a verdict in his favor, and cannot be aided by intendment, or a reference to extrinsic facts. If the facts found shew that there were others, touching which there was evidence, the truth of which is not negatived by the finding, the Court without rendering a verdict, should award a *venire facias de novo.*

5. Where the donee of personal property was under the age of twenty-one years, and lived with his father the donor, the possession by the donor of the gift, is consistent with the donee's right, and is not even presumptive evidence of fraud·

6. Though the statute of the 27. *Eliz.* against fraudulent conveyances has been often held to be affirmative of the common law, yet it may be regarded as a settled principle that it extends only to conveyances of real estate.

THE plaintiff in error brought an action of detinue in the Circuit Court of Mobile, for the recovery of two slaves, of the defendant. The cause being submitted to the jury they returned a special verdict as follows, viz: "We, the jurors of the jury, find that Lewis Sewall, of the county of Monroe was the owner of the slaves mentioned in the plaintiff's declaration, and that while he was the owner, he executed the deed hereto attached, and marked A; that the acknowledgements were made as is set forth on the said deed, and that the registry took place as is described and entered thereon, that there was no reason why the said Lewis Sewall should not make any disposition of his property at that time, and that he executed the deed *bona fide* at that time. We further find that the consideration of the said deed was the love and affection that the said Lewis Sewall had for his son, and that was the inducement to the deed, but that a consideration of one dollar for each slave was given at the time, and a formal delivery of the slaves was subsequently made; we further find that the donee was under the age of twenty-one, and remained under the care of his father, and generally resided with him until his death; we further find that the slaves aforesaid have never been under the actual management or control of the plaintiff, or any legal guardian of his, but the said slaves, from the date of said deed, 'till the sale hereafter mentioned, remained under the control and management of the said Lewis Sewall, and that he received the hire of the same for his own use; we further find that in 1828, the said Lewis Sewall sent the slaves to the city of Mobile to an agent of his, and that they were hired out in the said city until the date of the sale, and that the said agent accounted exclusively with the said Lewis Sewall.

"We further find that in the year 1832, the slave saforesaid were sold by an agent of said Lewis Sewall, (under his direction) to a person from whom defendant claims the sum of six hundred dollars as adequate consideration, and that the purchaser had no notice of the claim of the plaintiff until after the payment of the whole purchase money.

"We further find that in the year 1834, the defendant purchased said slaves for a valuable consideration fully paid; that he had no notice of the claim of the plaintiff; we further find that at the date of the writ, the defendant was in the possession and has so continued; that the girl Henny, at the time of the service of the writ, was worth five hundred dollars, and is worth at this time, four hundred dollars; that the boy Columbus at the service of the writ, was worth six hundred dollars, and is now worth eight hundred dollars; that the hire of the slaves has been worth five hundred and twelve dollars, and that by the detention, the plaintiff has sustained that amount of damages. If upon this state of facts, the law be for the plaintiff, we find for him the slaves or their alternative value, and the sum aforesaid for their detention. If the law be for the defendant, we we find for the defendant."

The deed referred to in the special verdict as marked A. professes to be made in consideration of natural love and affection, and one dollar paid to the donor. It bears date of the twenty-first day of October, 1826, and on it are endorsed certificates of probate and registration as follows:

"STATE OF ALABAMA, MONROE COUNTY.

"Personally appeared before me, James H. Draughan, clerk of the County Court of said county, the above named Lewis Sewall, who acknowledged that he signed the foregoing deed on the day and year therein written, for the uses and purposes therein mentioned. Given under my hand and seal this 11th day of December, 1826, and fifty-first year of American Independence. Attest:

JAMES H. DRAUGHAN, L. S.

Sewall, by his next friend, v. Glidden.

"STATE OF ALABAMA, MONROE COUNTY.
"Recorded in Record Book, No. 2, pages 397 to 398 inclusive,
on the 16th December, 1826.     Attest:
JAMES H. DRAUGHAN, Clerk."

"Filed for record, the 2d November, 1826.     Attest:
J. H. DRAUGHAN, Clerk."

The Court determined the law arising upon the finding of
the jury in favor of the defendant, and rendered a judgment
against the plaintiff for costs.   To revise the judgment of the
Circuit Court, the plaintiff has prosecuted a writ of error to this
Court.

J. GAYLE for the plaintiff.
J. A. CAMPBELL, for the defendant.

COLLIER, C. J.—*First*. It was argued for the defendants
in error that the deed from Lewis Sewall, professing to convey
to his son a title to the slaves in controversy is inoperative and
void against the defendant, who was a subsequent purchaser
without notice ; because the same was not recorded pursuant to
law.   At the time the deed of gift, under which the plaintiff
claims, was executed, the only law providing for the registration
of such a writing, was the second section of the *statute of
frauds*.   So much of that section as is material to the point, is
in these words :—" And moreover, if any conveyance be of
goods and chattels, and be not, on consideration, deemed valu-
able in the law, it shall be taken to be fraudulent within this act ;
unless the same be by will, duly proved and recorded ; or by
deed in writing acknowledged and proved.   If the same deed
include lands also, in such manner as conveyances of lands are
by law directed to be acknowledged or proved, or if it be of
goods and chattels only, then acknowledged or proved by one
or more witnesses, in the Superior Court or County Court, where-
in one of the parties lives, within twelve months after the exe-
cution thereof ; or unless possession shall really and *bona fide*
remain with the donee."   Here it is expressly required that in
order to the legality of the registration of a deed founded on a

consideration not "deemed valuable in the law," it should be "acknowledged or proved &c." "in the Superior or County Court &c." The smallness of the pecuniary consideration recited in the deed, and the great disproportion which it bears to what must have been the true value of the slaves given—the relationship of the parties and the very tender years of the donee, are circumstances all going to show *most conclusively*, that the moving cause to the execution of the deed was the "natural love and affection" which the donor bore to his son. Such being the consideration of the deed, as ascertained by the verdict it comes directly within the provision of the act cited, and to be operative to pass a title to the slaves named in it, it should have been "acknowledged or proved in the Superior (then the Circuit) or County Court wherein one of the parties lived, within twelve months after the execution thereof." By the record it appears the deed was only acknowledged before the *clerk* of the County Court where the donor lived. The clerk had no authority to take the acknowledgment; the registration was consequently irregular and the deed itself as against a subsequent purchaser without notice, became a nullity. That the defendant purchased in ignorance of the claim of the plaintiff, is expressly affirmed by the finding of the jury.

*Second.*—The deed being void, we will now inquire whether the finding of the jury shows that there was a gift by parol. In saying that the deed is void, we desire not to be understood as determining it to be invalid for all purposes, but merely declare it inoperative to pass title. It may, however, be regarded as equivalent to a parol declaration of the donor's wishes, and if the constituents of a gift *inter vivos* are shown, the plaintiff's right must prevail.

It is laid down in the books that at common law, in order to pass the title to a chattel by a parol gift, there must be an *actual delivery* of the thing. A mere intention or naked promise to give, without some act to pass the property, is not a gift. There exists the *locus penitentiæ* so long as the gift is incomplete and left imperfect in the mode of executing it; and a Court of equity will not interfere and give effect to a gift left inchoate and imperfect.

Sewall, by his next friend, v. Glidden.

[Hooper vs. Goodwin, 1 Swanst. Rep. 485 ; Bunn vs. Markham 7 Taunt. Rep. 224; Irons vs. Smallpeice, 2 Barnw. & Ald. Rep. 551 ; Antrobus vs. Smith, 12 Ves. Rep. 39 ; Pennington vs. Gittings, 2 Gill. & John. Rep. 221 ; Frisbie & wife vs. McCarty, 1 Stew't. & Porters' Rep. 56.]

The deed we have seen, declares the intention of the donor that the slaves should cease to be his property, and a title to them vest in his son, the plaintiff.    The jury find that " subsequently" to the execution of the deed and the payment of one dollar for each slave, "a formal delivery of the slaves, was " made." When, to whom, and upon what occasion this delivery was made, is not ascertained by the finding.    Whether it was made to the plaintiff, and whether it had reference to the deed, or to any pre-viously declared intention of Lewis Sewall to vest the property in his son, we are wholly uninformed.    These are questions to which the jury should have furnished a response by their verdict, and we are not authorized to infer from its silence a conclusion favorable to the plaintiff.

It is a well established principle that the Court will not aid a defective special verdict by intending facts to have been proved to the satisfaction of the jury, even if those facts appear from the record to have been given in evidence.    A verdict is the act of the jury and cannot be aided either by intendment or a refer-ence to extrinsic facts; otherwise it might become the act of the Court.    "Such an assumption" (say this Court in Lee vs. Campbell's heirs, 4 Porter's Rep. 202.) " we would consider a palpable, if not an alarming invasion of the rights of the jury. (See also Bolling vs. Mayor, &c. 3 Rand. Rep. 577 ; Brown, &c. vs. Ralston, &c. 4 Rand. Rep. 516.)

The finding of the jury then, in the particulars stated, is too uncertain and defective to have authorized the rendition of a judgment in favor of the plaintiff ; yet the facts found are such as to show, that there were other facts touching which there was evidence ; in regard to these the verdict is silent ; and the Court without rendering a judgment for the defendant, should have awarded a *venire facias de novo.*    It is laid down by the ele-mentary writers where an uncertain, ambiguous or defective

8

Sewall, by his next friend v. Glidden.

verdict has been rendered, the Court should award a *venire facias de novo*. (Steph. Plead. 120—21 ; Viners Ab. 466—1 ; Sellon's Prac. 495.) That means according to our practice, nothing more, than submitting the case to another jury for trial. (In Lee vs. Campbell's heirs, 4 Porter's Rep. 204.) This Court awarded a *venire facias de novo*, because the verdict did not find facts to authorize the plaintiff to recover, or show the insufficiency of the defence.

In Brown, &c. v. Ralston, &c. (4 Rand. Rep. 518), the Court of Appeals of Virginia, considered the difference between a *new trial* and a *venire facias de novo*, and in what cases the latter would be the appropriate procedure where the jury have returned a special verdict. Judge Carr, in his opinion, cites (Witham v. Lewis, 1 Wils. Rep. 54 and '5) a case, in which the twelve Judges of England associated with the Lord Chancellor Hardwicke, examine the same question. Lord Chief Justice Willes, in delivering the opinion of the Court remarks, "a *venire facias de novo* and a new trial are very different things, though alike in some points." They agree in this, that a new trial takes place in both, and that the Court may or may not grant either. They differ in this, that the *venire facias* is the ancient proceeding of the Common Law; the new trial, a modern invention, to mitigate the severity of the proceeding by attaint. New trials are generally granted where a general verdict is found; a *venire de novo*, upon a special verdict. The most material difference between them is, that a *venire* must be granted upon matters appearing upon the record; but a new trial may be granted upon things out of it; as if the verdict be contrary to the evidence, or the judge has given wrong instructions. But a *venire* can only be granted in one of two cases. 1st. If it appear upon the face of the verdict, that it is so imperfect that no judgment can be given upon it. 2d. Where it appears that the jury ought to have found other facts differently. An example of the first is the case of Chatie v. Harwell, a prosecution for selling wine by retail; *venire de novo*, because of the imperfection of the verdict; the act of Parliament having particularly mentioned retail measure, as quart, gallon, &c. ; and

the verdict only found that he sold wine by the bottle, without taking notice of the measures in the statute.   As to the second head, where it appears on the record that the jury ought to have found otherwise "in action of trover, if the jury in a special verdict find that the plaintiff demanded goods of the defendant, and he refused to deliver them, a *venire de novo* ought to go; because the jury have found only evidence of a conversion instead of finding the conversion itself."   A majority of the Court, in Brown, &c. v. Ralston &c. were of opinion that the special verdict in that case did not find sufficient matter to enable them to render a judgment upon it either for the plaintiff or defendant; but that it found facts from which an inference might be made either way.   This inference the Court was not authorized to make, as it was the appropriate office of the jury: (4 Rand. Rep. 531, '2, '5, '6: Hob. Rep. 262: 3 T. R. 198: Jenks *et al.* v. Hallett: 1 Caine's Rep. 60: .1 Hen. & Munf. Rep. 236: and Barnes *et al.* v. Williams: 11 Wheaton's Rep. 415.)

The authorities cited, show that where a verdict is so ambiguous or defective, that the Court cannot with certainty know what particular judgment the correct administration of justice requires: or where it appears that the jury ought to have found other facts, in such cases the correct practice is, to send the case to another jury.   That the verdict in the case before us is too defective to have authorized the judgment of the Court, has been already shown, and the consequences we have indicated must follow, unless independently of the defectiveness of the verdict, it appears that the plaintiff has no title to the slaves in controversy.

To show a want of title in the plaintiff, it was argued for the defendant, that the parol gift under which the plaintiff sought to recover, was inoperative and void, by the provision of the statute of frauds, already cited, *because the possession of the slaves did not really and bona fide remain with him.*   That a man not involved in debt may make provision for his children, is a principle not merely of municipal law; but of natural justice. And that a gift once perfected by delivery and acceptance is irrevocable, unless it be prejudicial to creditors, or the donor

was under a legal incapacity, or was circumvented by fraud, is well established; (2 Kent's Com. 440.) These words contained in the act referred to, viz: "or unless possession shall really and *bona fide* remain with the donee," clearly refer to gifts by deed which has not been registered, and indirectly declare that the actual and *bona fide* possession of the thing given by the donee, shall be equivalent to a registration of the deed.

We have already said that the finding of the jury is uncertain in regard to a delivery; that is, to whom, and in reference to what purpose or intention it was made. But assuming the delivery to have been made to the plaintiff, or some one else for him, with the design of carrying out the purpose expressed in the deed, we are of opinion that the possession of the donor *under the circumstances*, could not invalidate the gift. It must be remembered that the donee was of very tender years when the gift was made, continued to reside with his father up to the period of the death of the latter, and had not in fact, attained his majority when the present suit was commenced. The plaintiff had no guardian in respect to this or any other property, appointed by law. He lived under the paternal roof; and was controlled, both himself and the slaves by the donor: the possession of the father must be regarded as his possession. Any other conclusion would tend to injustice. The gift, if perfected by a delivery and acceptance, we have seen, was irrevocable by the donor. The donee, on account of his infancy, was not entitled to *actual* possession of the slaves, and *could do* no act to prejudice his rights: and inasmuch as he could not act in respect to the property, it seems necessarily to follow, that he cannot be injured by an omission to act. This course of reasoning, brings us to the conclusion, that the failure of the plaintiff to retain the possession of the slaves separate and apart from the control of the donor, does not bring his case within the influence of the statute of frauds, and thus avoid it.

In Howard v. Williams, (1 Bailey's Rep. 575), the Court of Appeals of South Carolina, held that the possession by the donor, if the donee be a child residing with the parent, was not to be deemed a badge of fraud.

It was argued further, for the defendant, that though there might be a valid gift *inter partes*, yet it could not stand against the defendant, who was a *bona fide* purchaser without notice. Under the statute of the 27th Eliz. all conveyances, &c. of lands, made with an intent to defraud and deceive such persons, &c. as shall purchase such lands, &c. for money or other good consideration, shall be utterly void. On the construction of this statute, it has been held that every voluntary conveyance, though *bona fide* made, shall be presumed to be fraudulent against a subsequent purchaser. (*Vide* 1 Fonb. Eq. 278, *et post;* and 1 Story's Eq. 344, *et post*, and cases cited in the notes.) But it has been repeatedly adjudged, and may now be regarded as a settled principle, that the statute of the 27th Eliz. does not extend to conveyances of personal, but of real property only: (Atherly on Mar. Sett. chap. 13, p. 207: Sugden on Vend. 471: Jones v. Croucher, 1 Sim. and Stuart's Rep. 315: 1 Story's Equity 344, *et post*; and Bohn v. Headley; 7 Har. & John's Rep. 257.) I have noticed the statute of 27th Eliz. and cited these cases to show what construction has been placed upon it, because that statute is confessedly confirmatory of the common law : (Jackson v. Henry; 10 John. Rep. 185: Killough v. Steele; 1 Stewt. & Port. Rep. 262.) But neither the common law, nor any statute operative here, made the gift, if it ever acquired validity, void, as against a subsequent purchaser *bona fide*, and for a valuable consideration. This conclusion results from what has been already said; and is sufficiently shown by authority; (Bohn v. Headley, 7 Har. & John's. Rep. 257: 2 Kent's Com. 440, *et post.*)

I am aware that in Frisbie & wife v. McCarty, I made a remark which may seem to conflict with our opinion upon a very important feature of the present case. I there said " if the deed be invalid, the plaintiff could not discard it and claim by force of the delivery of the negro made at the time of the execution: that constituted but a part of the *res questæ*, and had reference to, and was dependent upon the deed." The delivery of the slave in that case was made *simultaneously* with the execution of the deed. Here, it was made at a subsequent period:

whether this difference in the facts require the application of different principles, we will not now inquire. 'We are entirely satisfied with the law as laid down in this opinion.

The best consideration we have been able to give this case, brings us to the conclusion that no judgment should have been rendered upon the special verdict; but that the case should have been submitted to another jury.

That there may be a determination upon the principles stated, the judgment of the Circuit Court is reversed and the case remanded, that a *venire facias de novo,* may be awarded.

JUDGE GOLDTHWAITE not sitting.