## NELSON vs. IVERSON.

1. Proof of a fact, tending to show a moral consideration for a gift, is not irrelevant, especially when it is attempted to be shown by the opposite party that declarations of the alleged donor, by which the gift is sought to be established, were made in jest.

2. Where the object is to impeach a witness by showing that he has made declarations inconsistent with his testimony, it is not necessary, in laying the predicate, that the language used by the witness should be stated, but the substance of what he is supposed to have said is all that is required.

3. The declarations of a party in possession are admissible as a part of the *res gestæ* to prove the character of his possession, as that he claims the property as his own, or holds it in subordination to the claim of another, but not to show that he had not given it to a third person, or that what he said about such gift was in jest, or that he only loaned it.

4. If a bailee, asserting no title in himself, in good faith restores the property to the bailor in accordance with the express or implied terms of the bailment, before he is notified that the true owner will look to him for it, no action can be maintained against him either for the property or its value.

Error to the Circuit Court of Macon. Tried before the Hon. John J. Woodward.

Nelson v. Iverson.

THIS was an action of detinue instituted by the plaintiff against the defendant in error to recover two slaves, which he claimed by virtue of a parol gift from his uncle, Garland Dawkins. The proof tended to show that in 1823 the said Garland Dawkins gave a slave by the name of Lucy and the mother of those sued for to the plaintiff, who was then an infant, and delivered possession to his mother, Mrs. Martha Nelson; that Mrs. Nelson retained the possession of Lucy until 1830, when the said Garland Dawkins obtained the possession of her from Mrs. Nelson, and retained it until his death in 1838; that the defendant in 1848 hired the slaves sued for, who are the children of Lucy, from the widow of Garland Dawkins, under an express agreement that he would deliver them to her at any time that she should think proper to demand them; and that she demanded and retook the possession of them before the institution of this suit, but not before the defendant had notice of plaintiff's claim. Several exceptions were taken to the ruling of the court in respect to the exclusion and admission of testimony, all of which can be sufficiently understood by reference to the opinion. The court gave two charges to the jury, which in substance affirmed the proposition that although the jury should believe that the slaves sued for were the property of the plaintiff, yet if the defendant hired them from the widow of Garland Dawkins under an agreement that he was to re-deliver them to her on demand, and they were re-delivered to her on such demand before the institution of this suit, the plaintiff is not entitled to recover, notwithstanding the defendant may have had notice of his claim before he gave up the possession of the slaves.

RICE & MORGAN, for the plaintiff:

1. Detinue may be maintained against a defendant who has had possession of the chattel sued for, but has *parted with the possession* (without being divested of it by authority of *law*) before the date of the writ.—Pool v. Adkisson, 1 Dana's Rep. 118; Brown v. Brown, 13 Ala. 212-'13, citing and approving two cases which hold the doctrine here stated.

2. The declarations of the donor made at or about the time of the gift, or any *fact* which proves that it was reasonable or natural that he should make the gift, must be admitted as evidence. "What he said *afterwards*, when the act was consum-

15

mated, by the gift itself and *seven years' possession under it*, was not competent evidence for him, (or one standing in his place,) as he could not then alter, limit or change the title he had made."—Powell v. Olds, 9 Ala. 864; Mawhiny & Smith v. Thompson, January Term 1850, by Ch. J. Dargan. (This shows that the *first two exceptions* are well taken.)

3. In the action of detinue, after the plaintiff has made out a *prima facie* case, the *defendant* cannot be allowed to show that whilst he had possession of the slaves sued for, *he declared* that said slaves "belonged to" a third person—nor that *he declared* that he held the slaves "under a contract" with a third person. State v. Wisdom, 8 Porter.

4. The evidence of Reuben Dawkins as to the declarations of the witness Martha Nelson to him, in the spring of 1830, is manifestly irrelevant and improper, and inadmissible. Judge Underwood's dissenting opinion, in the case cited from 1 Dana, *supra*, is founded on a *fallacy*—to-wit,—"The bailee is estopped to deny the title of his bailor."—1 Dana, 123. This is not the law in this State.—Mitchell v. Spence, 9 Ala. 744.

5. The object of the action of detinue is to recover the article in specie, "and where this is *impossible at the time of the action brought*," the action will not lie. This rule applies only where the chattel sued for is either *dead or destroyed.*—Lindsey v. Perry, 1 Ala. 203; cases above cited from 13 Ala. 213-'14, and from 1 Dana R.

6. A right of action once complete, cannot be divested by any mere act of the defendant without consent.—Leavitt v. Smith, 7 Ala. 175.

BELSER and GUNN, for the defendant:

1. The fifth interrogatory and the answer to it, in the deposition of Mrs. Nelson, one of plaintiff's witnesses, were properly excluded from the jury.—McCurry v. Hooper, 12 Ala. 822; Abney v. Kingsland, 10 Ala. 355.

2. The declarations of Garland Dawkins were competent testimony under the circumstances.—Gay v. Terell, 9 Ala. 206; Oden v. Stubblefield, 4 Ala. 40: And the following case does not exclude them—Julian v. Reynolds, 8 Ala. 680.

3. The declarations of the defendant as to the way in which he held the negroes, in 1848, were also permissible.—Parker v.

Goldsmith, 16 Ala. 527-'28; Webster v. Smith, 10 Ala. 429; Beal v. Ledlow, 14 Ala. 523; Yarbrough v. Moss, 9 Ala. 382.

4. The statement of the defendant's witness Dawkins, of what he heard from Mrs. Nelson about the property sued for, was also permissible.—Moore v. Jones, 13 Ala. 296.

5. The two charges given to the jury were both correct.— Parker v. Goldsmith, 16 Ala. 528; Dent et al. v. Chiles, 5 Stew. & Porter, 383; Abercrombie v. Bradford, 16 Ala. 560; 1 Bacon's Ab. title Bailment, d; 2 Bos. & Pul. 462; Stephens v. Vaughn, 4 J. J. Marshall, 207.

CHILTON, J.—1. The first question is, did the court properly reject the fifth direct interrogatory propounded to Mrs. Martha Nelson, and the answer thereto.    We think the proof proposed was competent.    The question was whether Garland Dawkins had given the property in controversy to the plaintiff? This witness is examined to prove the gift, and is then enquired of as to the reason which prompted the donor for making it. She states that he "received more of the estate of his father than his brothers and sisters, and gave the property to the plaintiff on that account, and promised to do even more than that." The witness states this as a fact, and inasmuch as it tends to show a moral consideration operating upon him as inducement to the gift, it was not wholly irrelevant, especially since there was an effort to show that the declaration of the donor by which a gift was sought to be established, was made in jest.

2. In laying the predicate so as to impeach a witness by proving that he has made declarations different from his testimony given upon the trial, the general rule requires that the examination should relate to such declarations as are pertinent to the issue, and when the supposed contradiction consists in verbal statements, the party desiring to impeach the witness must call his attention to the time, place and person involved in the supposed contradiction.—1 Greenl. Ev. § 462; The Queen's case, 2 Brod. & Bing. 313-'14; Angus v. Smith, 1 M. & Malk. 473; 8 C. & P. 606; 9 ib. 277; Lewis v. Post & Main, 1 Ala. 65-9; Moore v. Jones, 13 ib. 296.    We do not think, however, the rule is so stringent as to require that the party should ask the witness if he did not use certain language, but it will suffice to give the substance of the counter declaration, and ask the wit-

ness if he did not make that or one of similar import? We think the predicate laid in the case before us fully comes up to the rule. Here the witness, Mrs. Nelson, is asked on the cross-examination, "Did you not in a certain conversation with Reuben Dawkins, at his house in the spring of 1830, speaking of the promise of Garland Dawkins to give Judy to a boy, if you had one, say that such was his promise, but that he had not done so? —or did you not say that said Garland Dawkins spoke only in jest when he made the promise, and that you knew it at the time, or something to that purport, and what?" To this the witness answers, she did not. After this predicate, we think it was entirely competent for the defendant to prove by Reuben Dawkins, the person with whom the conversation enquired for was had, that at his house, in the spring of 1830, the said Martha had stated to him that Garland Dawkins never had given Judy to the plaintiff, and that what he had said to her on the subject was said in jest. It is substantially the conversation enquired for, and is pertinent to the issue in the cause.

3. Upon the subject of the donor's declarations, made after the alleged gift, but while he had possession of the property, we think the court entirely misconceived the law. The plaintiff had proved by one witness that in June 1823, the said Garland Dawkins had given the property in dispute to him, and that the gift, which was by parol, had been consummated by an actual delivery: That the mother of the plaintiff had kept the property for him (he being an infant) for more than seven years until 1830, when she delivered the property to said Garland to be returned in a few days to her. The circuit judge permitted the witness to prove that Garland Dawkins, while he had said property in his possession as above, declared, 1st, That said property belonged to him : 2d, That he had never given the same to the plaintiff: 3d, That what he had said about giving the property to the plaintiff, was in jest; and 4th, That he had only loaned said property to Martha Nelson, his sister. Now if we concede that the donor may by his declarations, made while he has possession of the subject of the gift, defeat the title of the donee, it is very clear that such declarations would be inadmissible except as explanatory of his possession. They may be introduced to show the character in which he held the slaves, whether in his own right or for another; but when they are not

explanatory of the possession—when they relate to facts or transactions outside of and having no necessary connection with the possession, they become inadmissibile. The *character of the possession* is the main fact to be proved. How did he hold or possess the slaves? Did he couple his holding with any declaration which explains it? Did he say they were held by him as his own property, or his possession was as bailee for another? These and similar declarations accompanying the main fact and explaining it form parts of the *res gestæ*, and are legitimate as proof. But it has never been held by this court, notwithstanding the distressing number of decisions involving pretty much similar questions, that the possessor may avail himself of his possession to make his declarations, which are a narrative of and relate to past transactions involving the title of others to the property in dispute, legal proof. Were such the law, a party who has no shadow of right save such as possession evinces might declare himself into a good title by defeating that of the true owner. But the law holds out no such temptation to deceit and falsehood. The counsel for the defendant in error has refered us to several cases which he insists are in point to show that these declarations should have been allowed. We will briefly notice them. In Oden v. Stubblefield, 4 Ala. 40, the question was whether W. T. Stubblefield had held the possession of the property sued for three years without interruption, so as under the statute to protect Oden, a purchaser from him. It appeared, however, that the property in the meantime had gone into the possession of the plaintiff, John Stubblefield, from whom William T. claimed to have obtained it by deed of gift. The latter regained the possession, and while he was holding it said he had some difficulty in getting the possession, and to satisfy the family had to promise to return it at the end of the year. This declaration was held admissible, and very correctly, as explaining the possession of William T.; for it amounted to this—"I am holding this property as my own, but under a promise to return it to John Stubblefield, from whom I obtained it." But it was perhaps admissible in another view. It was the declaration of a vendor before the sale, made against his own interest, and was offered against one who set up a title acquired subsequent to its being made from the declarant.—1 Greenl. Ev. § 190; Jackson v. Bard, 4 John. Rep. 230; Weidman v. Kohr,

4 Serg. & Rawle, 174. The declaration, however, was clearly part of the *res gestæ*, as explanatory of the possession. The case of Garey v. Terrell, 9 Ala. 206, is no authority in support of the defendant's position; for in that case the declaration, which was that the party in possession claimed the property as his own, was admissible solely upon the ground of its being part of the *res gestæ*, as it tended to show whether the party held it in his own right or under another. Besides, in that case the doctrine laid down in McBride & Wife against Thompson, 8 Ala. 650, is re-affirmed, namely, that the declaration of the party in possession would be no evidence of the price he had paid for the property, or that it was acquired *bona fide* and for a valuable consideration, or was paid for with his own money, and the like. But it is unnecessary further to dwell on this point. The previous decisions of this court clearly show that what Garland Dawkins said as to the property belonging to himself while he had it in possession, was legal proof, but his declarations that he had never given it away to the plaintiff, that what he said about giving it to him was said in jest, and that had loaned it to Martha Nelson, went quite beyond the question of possession—formed no part of the *res gestæ*, and were improperly admitted. Abney v. Kingsland & Co., 10 Ala. 355; Degraffenreid v. Thomas, 14 Ala. 681; Webster v. Smith, 10 ib. 429; Beal v. Ledlow, 14 ib. 523; Parker v. Goldsmith, 16 Ala. 526; Mawhiney & Smith v. Thompson, at the present term. The authorities above refered to we think sufficiently show that the declarations of the defendant, showing as they do that he held the possession of the slaves not in his own right, but under another, were properly allowed to go to the jury. The weight to which they were entitled was a question for the jury.—Garey v. Terrell, *supra*. It appears that these declarations were made before suit brought, and do not fall within the rule settled by this court in 14 Ala. 9, and 8 Por. 511.

4. As this case must go back for another trial, it is unnecessary for us to give to the charges of the court which were excepted to, a critical examination. It will be sufficient for the further action of the court below that we state the law upon the point raised by the charges.

It cannot be the law, that if the way-faring man stop at my house and I extend to him the usual civilities and courtesies of

life, feed his horse and take charge of his baggage, that after I have restored to him his horse and baggage, without notice or demand of the true owner, I should be liable in detinue or any other action for the property thus temporarily in my possession. The application of such a principle, as has been justly remarked, "would bring about a state of distrust and suspicion tending to destroy the courtesies of life, and to clog the business transactions of society."—Per Underwood, J., dissenting, 1 Dana's Rep. 122. We take the true doctrine to be this: If the bailee have the temporary possession of property, holding the same as the property of the bailor and asserting no title in himself, and in good faith in fulfilment of the terms of the bailment, either as expressed by the parties or implied by law, restores the property to the bailor before he is notified that the true owner will look to him for it, no action will lie against him, for he has only done what was his duty. Whether, if a bailee sell the goods to a third person by virtue of a supposed authority derived from the constituent, when such principal having no title could confer no authority, he would be liable, is a question outside the facts of this case, and one which we do not decide. All we assert is, that if the defendant in this case, in good faith, hired the property in dispute, and before the true owner asserted his claim had honestly restored it to the bailor, not having put it out of his possession for the purpose of avoiding this action of detinue, he is not liable to the owner of the property in this suit.—Bac. Abr., title Bailment; Story on Bailment, §§ 104-'5.

Judgment reversed and cause remanded.