## PERRY vs. GRAHAM.

1. A deed of gift is good as between the parties, although not proved and recorded as the Statute prescribes.
2. Where the question at issue is whether or not the gift of a slave had been perfected before the marriage of the donee, the fact that the donor was opposed to the marriage is wholly irrelevant.
3. The declarations of a third person, whilst in the possession of property, explanatory of the nature of the possession, are admissible in evidence as part of the *res gestæ.*
4. But such declarations cannot be admitted for the purpose of proving the manner in which title was acquired.
5. The opinion of a witness as to what the facts prove is not admissible. It is the province of the jury alone to draw conclusions.
6. The declarations of the wife, in reference to the title of a slave, over which she is merely exercising control as a domestic in the family, are not admissible against the husband.
7. The simple fact of marriage, without any thing further, does not constitute the husband, within the meaning of the Statute, a purchaser of property held by his wife under a pretended loan for three years, without demand, &c., on the part of the lender.

ERROR to the Circuit Court of Perry. Tried before the Hon. Geo. D. Shortridge.

THIS was an action of detinue brought by the plaintiff against the defendant in error to recover the possession of a slave. The plaintiff claimed title under an alleged parol gift from Joseph B. Chambers to his grand daughter, Frances McKewall, with whom the plaintiff intermarried in February 1847, and who died in the month of December following the marriage. It appears from the bill of exceptions that the slave in controversy was purchased in the year 1842, by the said Joseph B. Chambers, with the avowed intention of giving her to the said Frances McKewall, at a sale of the estate of Wm. J. McKewall, and was left by him in the possession of the defendant in error, who was the administrator on said estate, from that time until after the marriage of the plaintiff and the said Frances; that the said Frances lived with the defendant from 1842 until her said marriage and most of the time after, he being her step father, and that, during the whole time, she exercised many acts of ownership over the slave, but as to whether she had the possession, or it was in the defendant, was a disputed fact on the trial. On

the 22d June 1847, the said Joseph B. Chambers, in execution of his previously avowed intention, made a deed of gift by which he conveyed the slave to the defendant in trust for the sole and separate use of the said Frances, then the wife of the plaintiff, for and during her natural life, with remainder to her children, and if she should die without leaving any at the time of her death, then to her surviving brothers.    This deed was recorded on a probate taken by the clerk of the County Court.    The said Frances died without having had a child, leaving three brothers surviving.    On the trial the deed of gift was offered in evidence and objected to by the defendant on the ground that it had not been properly proved and recorded, and that his marital rights had previously attached, by the possession of the slave by the said Frances before and after the marriage, but the court over-ruled the objection and the deed was admitted.    The defendant was allowed to prove that Joseph B. Chambers was dissatisfied at the marriage of the said Frances, and would not have given his consent to it, had he known that it was about to occur; the proof was objected to by the plaintiff.    The plaintiff offered to prove by a witness that, at a time when the slave was in her possession, the said Frances said that the slave belonged to her; also that her grand father gave the slave to her; to each portion of this testimony the defendant objected, and his objection was sustained by the court.    The plaintiff further offered the answer of a witness, in which the witness said, "judging from circumstances, I would say that she (the slave) was in the possession of Miss McKewall," which answer was, on the objection of the defendant, excluded by the court.    The plaintiff further offered to give in evidence the declarations of the defendant's wife, touching the title to the slave, whilst the slave was in her possession, and waiting on her, but the court rejected the proof. The plaintiff asked the court to charge the jury—1st. That if they believed from the evidence that the slave sued for had been permitted by the said Joseph B. Chambers or his agent, the defendant, to remain in the possession of the said Frances for three years previous to her marriage with the plaintiff, without demand made and pursued by due course of law, the plaintiff would be considered a purchaser within the statute of frauds and entitled to recover—2d. That if said slave was in the possession of said Frances when the treaty of marriage commenced,

and said Chambers suffered her to remain there during the pendency of such treaty, and gave no notice of his rights, knowing that the said treaty was in progress, then the plaintiff was entitled to recover. The court refused to give either of these charges, and gave charges substantially the reverse of the first, varying slightly in the language used.

To the several rulings of the court, to the refusal to charge as requested, and to the charges given, the plaintiff excepted, and now assigns them as error.

I. W. GARROTT, for the plaintiff in error.

No counsel for the defendant.

CHILTON, J.—Perhaps we can with less prolixity investigate the alleged errors, in the order in which they are presented by the bill of exceptions; and,

1. The Circuit Court did not err in admitting the deed of gift from Chambers to Graham, the trustee, for the use, &c., of Mrs. Perry, to be read to the jury. It is true the deed is not to be regarded as a recorded instrument, having been acknowledged before the clerk of the County Court, whereas the statute requires such deeds to be " acknowledged or proved by one or more witnesses, in the Circuit or County Court of the county, wherein one of the parties lives."—Clay's Dig., 255, § 2; Sewall v. Glidden, 1 Ala. 52. This statute was designed to prevent frauds upon creditors and subsequent *bona fide* purchasers from the donor, and as no person filling either class has any connection with this suit, we do not see how the statute has any application. The deed is good as between the parties, without registration—(Sewall v. Glidden, 1 Ala. 52; Myers v. Peck, 2 ib. 648; McRea v. Pegues, 4 ib., 158; Foster v. Mitchell, 15 ib., 571,)—and considered in connection with the proof made in the cause, both before and subsequent to its introduction, conducing to show a title to the slave in the grantor, it was clearly admissible, as relevant to the issue involved.

2. We cannot percieve what influence the proof of Chambers' opposition to the marriage of his grand daughter to the plaintiff could legitimately have had upon this cause. If he had perfected a gift of the slave to Mrs. Perry before the marriage, he had no power longer over the property, and conse-

quently his favor or opposition to the marriage would be wholly unimportant, as affecting the title to it. If after the marriage he had the right to dispose of the slave by deed to the separate use of Mrs. Perry, the fact being conceded, the motive which prompted him thus to execute the deed becomes unimportant. So that we conceive the fact, that the donor would have opposed the marriage of his grand daughter, had he been apprised that it was about to occur, to be incapable of affording any reasonable presumption as to the title to the slave, and calculated to mislead and prejudice the minds of the jury.—1 Greenl. Ev., § 52.

3. The Circuit Court clearly misconceived the law in excluding the declaration made by Miss McKewall, when in possession of the slave, that she belonged to her. This declaration was explanatory of the possession and was clearly admissible by numerous adjudications of this court.—See the authorities cited on the brief of plaintiff's counsel, and Nelson v. Iverson, 17 Ala. 216; Hadden's Ex'rs v. Powell, ib. 314; Mobley v. Bilberry, ib. 428; Thomas v. Degraffenreid, ib. 602; Garey v. Terrell, 9 ib. 206; McBride et al. v. Thompson, 8 ib. 650.

4. But what she said about her grandfather having given the slave to her, is not explanatory of the possession, but of the manner in which she acquired title to the slave, and falls within another rule, well established by numerous decisions, that declarations of the party in possession, going beyond an explanation of his possession and constituting no part of the *res gestæ*, should be rejected. See the rule exemplified in Nelson v. Iverson, 17 Ala. 216; Hadden's Ex'rs, v. Powell, ib. 314, and Thompson v. Mawhinney & Smith, ib. 362. This portion of the deposition was properly excluded.—See also, McBride & Wife v. Thompson, *supra.*

5. The court also properly excluded the conclusion or opinion of the witness as to the posssssion of the slave in controversy. It was the appropriate office of the jury to draw the conclusion as to the fact of possession from the circumstances developed in evidence and upon which the witness predicated his opinion. The law does not permit that the witness should be put in the place of the jury to draw conclusions for them.—Herrick v. Lapham, 10 Johns. 281; Donnell v. Jones, 13 Ala. 490, 511; 2 Phil. Ev., C. & H. note 759, *et seq.*

6. In respect to the declarations of Mrs. Graham, the wife of

the defendant, it is only necessary to observe, that ordinarily the admissions or declarations of the wife will only bind the husband in cases where she has authority to make them, as in cases of agency, (1 Greenl. Ev., § 185; 2 Phil. Ev., C. & H. notes, p. 152, note 160,) and that in this case, it does not appear the husband had delegated to the wife any such authority. On the contrary, we may well conclude that the husband and wife were living together and the declarations were made by the latter while exercising that control over the domestics which usually devolves upon her. Such control and possession do not make her declarations evidence against her husband, in regard to the title to such property, as that it belonged not to her, but to the wife of the plaintiff.

7. The only remaining question, which it is necessary for us to consider, is, should Perry, the husband, in consideration of the marriage with Frances McKewall, be deemed a purchaser in the contemplation of that clause in the statute of frauds which declares, that "when any loan of goods and chattels shall be pretended to have been made to any person, with whom, or those claiming under them, possession shall have remained by the space of three years, without demand made and pursued by due course of law, on the part of the pretended lender, &c., the same shall be taken as to the creditors and purchasers of the person aforesaid so remaining in possession, to be fraudulent within this act, and the absolute property is with the possession, unless such loan, &c., be declared by will or deed in writing, proved and recorded," &c.—Clay's Dig. § 2, p. 255.

We readily concede that marriage is a valuable consideration to support a contract, and that it may be deemed as much more valuable than money, as it more permanently affects the happiness and prosperity of the parties, and imposes duties and obligations from which there is no escaping; and had Mrs. Perry before her marriage entered into a settlement or anti-nuptial contract, disposing of the slave in question, we are not prepared to say, the husband, who should claim under such contract in consideration of the marriage, would not be regarded as a purchaser for a valuable consideration within the contemplation of the act. But it is improper that we should decide that question now, as it does not arise. In this case, there was no contract or agreement whatever in regard to this slave—nothing to show that the

husband was in the least induced to contract the marriage under the belief that this slave belonged to his intended wife; so that the question is simply whether the marriage constitutes him a purchaser, in the meaning of the statute, of property held by his wife under a pretended loan for three years without demand, &c., on the part of the lender.

Marriage, say the law writers, is a *gift* of the wife's personal chattels in possession to the husband.—Co. Lit. 351 *b*; Clancy's Hus. & Wife, 2. The law, as an incident to the marriage, vests such property in the husband, and it cannot be said to pass to him by virtue of a *sale* from the wife in consideration of the marriage. True, in the strict technical sense, he may be said to be a purchaser, or to come to the wife's property by purchase, as in that sense every estate is by purchase, unless it be by descent. But it is very clear that this is not the sense in which the Legislature used the term, "purchaser," in this act, otherwise, it would include an estate by gift, escheat, and the like, which would fall within the technical meaning of the term. The rule of construction requires, that words, in an act of the Legislature which do not relate to a technical subject, should be understood in their popular sense.—9 Bacon's Abr., (Bouv. edit.,) 238; Macy v. Raymond, 9 Pick. 285 ; King v. Pease, 4 B. & Adol. 30; S. C., 24 Eng. C. L. Rep. 17. Thus construed, it is very clear the Legislature meant by the term, purchaser, one who acquires the property by bargain and sale for a valuable consideration.—See Toml. Law. Dic. Tit. "Purchase."

The view here taken does not in the least conflict with the numerous cases, which hold that an intervening marriage may operate *ex post facto* to validate a previous voluntary conveyance to the wife, even as against creditors or subsequent purchasers from the grantor, if the marriage be *bona fide* and there be no actual intention to defraud. In the case before us, there is no previous agreement upon which the consideration of marriage can attach, so as to make it valid. The simple question is, whether the marriage so operates, as under the statute to vest the absolute property in the husband, by reason of the three years previous permissive possession of the wife. We are clear that it does not, and that the husband acquired no greater interest than the wife had at time of the marriage.

The other points raised by the charges asked and those given by

the court are substantially covered by the views above expressed, and we conclude the court did not err in refusing the charges asked and in giving those excepted to. But for the errors previously noticed, the judgment must be reversed and the cause remanded.