## Robert McCulloch v. Rufus H. Renn et al.

In the State of Alabama, a purchase of slaves by an administratrix, at a sale by herself and co-administrator, and a confirmation of the sale by the orphans' court of that State, vested title in her to the slaves purchased.

By the intermarriage of parties, in 1840, in the State of Alabama, where the common law as to marital rights was then in force, slaves belonging to the wife became the property of the husband; and a subsequent sale of such slaves by the wife, without the concurrence of the husband, conveyed no title. (Paschal's Dig., Art. 4639, Note 1046, and Art. 1000, Notes 422 to 424.)

A husband and wife residing in the State of Alabama made a deed of gift of three slaves, which the wife had brought into the marriage, to the wife's two infant children by a former husband, and the children continued to reside with the parents; but the slaves remained in the possession of the grantors subsequent to the execution of the deed of gift: *Held*, that such subsequent possession was consistent with the deed of gift, and did not of itself afford evidence of fraud, whether properly recorded or not.

Actual notice of the deed of gift debarred a party subsequently purchasing the slaves from the administrators of the former owner from the protection accorded to an innocent purchaser for value without notice, whether the first deed were properly recorded or not.

The donees of the slaves under the deed of gift were entitled, upon attaining their majority, to recover them in this State from a defendant who held them by purchase under the party who thus bought them with notice of the deed of gift, notwithstanding that such notice was not imputed to the defendant himself, and notwithstanding that the defendant and his vendor had held possession of the slaves for some seventeen years during the minority of the plaintiffs.

Infancy proved is a full replication to a plea of two years' possession of chattels.

Appeal from Lavaca. The case was tried before Hon. Fielding Jones, one of the district judges.

This suit was brought by the appellees on the 18th of November, 1857, to recover from the appellant a negro woman named Bettie and her three children. The plaintiffs were R. H. Renn, who joined with his wife, George Ann (Johnson) Renn, and her brother, James Henry Johnson, who sued by his guardian, the said R. H. Renn, who (wife and ward) claimed as heirs of George Washington

Johnson, and by deed of gift from their mother, against Robert McCulloch. The defendant plead the general issue and fraud in the guardians of the plaintiffs, McDade and wife. He also plead the limitation of two years. There were many amendments, but the issue was, who was entitled to the negroes?

George W. Johnson, the father of George Ann and James Henry, died on the — day of February, 1839, in Montgomery county, Alabama, leaving his widow, Nancy Ann Johnson, and one child, the present plaintiff, James Henry Johnson, who was born on the 13th of October, 1837. In September, 1839, the plaintiff, George Ann, was born, her father having died a few months previous to her birth.

George W. Johnson left as a part of his estate the negro Bettie, then a child, now in controversy. On the 22d of April, 1839, administration on George W. Johnson's estate was granted by the orphan's court of Montgomery county, Alabama, to the widow, Nancy Ann Johnson, and one James H. McCulloch. In July, 1839, the same court ordered a sale of the stock and perishable property of the estate, and in August following a return of the sale was made. By this return of sale and by other evidence it appears that the negro Bettie and two others were sold, and purchased by the widow and administratrix, Nancy Ann Johnson. An order of court approving the sale was made on the 9th of September, 1839, and it was proved that this sale passed a good title to Nancy, the widow and co-administratrix.

On the 1st day of March, 1840, the widow, Nancy Ann Johnson, consoled herself and married Charles F. McDade, and by the marriage the property in the negress vested in the husband. And on the 4th of May, in the same year, these parties, McDade and wife, executed a deed of gift of the negro to George Ann, now seven months old, and James Henry Johnson, two and a half years old, the pre-

sent plaintiffs. These donees, being infants, continued to reside with McDade and wife, and no ostensible change of the possession of the property took place. On the day of the execution of the deed, however, McDade and wife acknowledged it before a justice of the peace, and on the next day it was recorded in the county clerk's office of said county of Montgomery.

On the 18th of May, 1840, Nancy Ann McDade and James H. McCulloch sold the negro to Mary Carson, the mother of Nancy, who then took possession of the girl. The sale seems to have been without any order of court. Some of the witnesses state that Mrs. Carson paid a full money consideration for the property, while others testify that she paid nothing, and it appears from some of the testimony that she was fully informed of the previous deed of gift to the plaintiffs. It was all a family arrangement.

In 1841, or the next year, McDade and wife removed from Alabama to Texas, bringing the plaintiffs with them. On the 13th of May, 1857, before a notary public of Washington county, they made a new acknowledgment of the deed of gift to the Johnson children, and on the 18th of the next month it was recorded in that county.

On the 14th of January, 1857, the plaintiff, George Ann, being then in her nineteenth year, married R. H. Renn, and on the 2d of November following he was duly appointed and qualified as the guardian of James Henry Johnson, who then was still in his minority. In a few months afterwards James Henry attained his majority, and thenceforward appeared as a plaintiff in his own right.

The defendant, Robert McCulloch, had acquired the title of Mary Carson, and had held possession of the negro and her children for some seven years, when the suit was brought. He set up in his answers that he was an innocent purchaser for valuable consideration, and that the plaintiffs were barred by the limitation of two years.

McDade and wife, the parents of the plaintiffs, were the principal witnesses for them.

The case came to trial at the March term, 1860, and the jury returned a verdict for the plaintiffs. A new trial being refused, judgment was rendered against the defendant, and he appealed. The instructions of the court were much stronger for the defendant than the law of the case. They allowed the jury to disregard the deed of gift altogether.

*Holt & Finlay* and *J. T. Harcourt*, for the appellant, argued upon the facts and the statute of frauds.

*Webb & Jarmon*, for the appellees.

SMITH, J.—We are of opinion that the sale of the negro, Bettie, on the 11th August, 1839, by the representatives of the estate of George W. Johnson, deceased, and the confirmation thereof, vested the title in the purchaser, Nancy Ann Johnson; and that by the common law, which was in force in the State of Alabama at the date of her intermarriage with Charles F. McDade, on the 1st March, 1840, her title to the negro was completely vested in her said husband; and that the deed of gift for the negro, executed by said Charles F. McDade and wife, 4th May, 1840, to the minors, John H. and George Ann Johnson, now Renn, operated to vest the title fully in them.

At that time the said minors were very young, and the subsequent possession of the negro by their said parents was consistent with the deed of gift, and of itself it did not afford evidence of fraud in the deed, whether properly recorded or not. (6 Tex., 49; 1 Ala., 52.) Upon the question of title in the plaintiffs below, we believe the evidence sufficient to warrant the verdict of the jury in this respect.

The defendant below contends, and there is evidence

going to prove, that after this deed of gift was made Nancy Ann McDade and James H. McCulloch sold the negro, Bettie, to Mrs. Carson, for $800; that she at her death had possession of the said negro, and, under her, the defendant claims title and insists that the deed of gift was fraudulent and void as to her, she being a subsequent purchaser for value, &c. There is some conflict of testimony respecting the consideration paid by Mrs. Carson for the negro, part going to prove she paid $800, and some that she paid nothing for her. However that may be, the weight of the testimony appears to be that she and those claiming under her had notice of the deed of gift at the time of her purchase, which will deprive them of all the protection given by law to subsequent innocent purchasers, whether the deed of gift were duly recorded or not.

There appears to be another difficulty in the way of those claiming under Mrs. Carson. She purchased from Mrs. McDade, who, on account of her coverture at the time, could make no valid sale of the property, if it had been hers, and the purchaser from her could take no title. Besides, she had none to transfer, her title having passed to her husband, Charles F. McDade, who refused to concur in the sale to Mrs. Carson. She, having acquired no title, could transfer none to the defendant below.

The minority of the plaintiffs below protects them from the operation of the statute of limitation.

The charge of the court to the jury may be objectionable, as not presenting the law of the case in as clear a light as it should have done, but the error, if there be any, was in favor of the defendant below, and can furnish him no grounds of reversal.

Upon a full consideration of the merits of the cause, we are satisfied that the verdict of the jury and the judgment are in accordance with the justice of the case, and the judgment is

AFFIRMED.