PHILLIPS v. McGREW.

1. A charge to the jury, that the plaintiff could maintain his action, "upon his possession, derived as heir of his deceased brother, and as his bailee," is erroneous, as it is an invasion of the province of the jury, whose right it was, to determine the character of the possession.

2. Possession is sufficient evidence of title, in trover, or detinue, against a wrong doer.

3. Delivery of possession, or something equivalent to it, is an essential ingredient of a gift.

Writ of Error to the County Court of Sumter. Before his honor G. B. Frierson.

This was an action of detinue at the suit of the defendant in error for the recovery of two female slaves, named Melissa and Eliza. The cause being submitted to a jury, a verdict was returned for the plaintiff, assessing the value of the slaves and damages for their detention severally, and judgment was thereon rendered. From a bill of exceptions sealed at the defendant's instance, it appears that the slaves in controversy were at one time the property of William McGrew, deceased, and were distributed to his son, W. P. McGrew, as a part of his father's estate. The defendant, Mrs. Phillips, was formerly the wife of Wm. McGrew, and the mother of W. P. McGrew and the plaintiff, as well as the mother of her co-defendant, Levin Phillips, by a second husband. W. P. McGrew, in the year 1833, and for several years previously, was in possession of these slaves, and continued the proprietor of them up to the 4th February, 1838, when he died. On the day last mentioned, the plaintiff was in possession of Eliza, and shortly afterwards Melissa came into his possession—both of which he retained until the 20th April, 1845, when they left his possession against his consent, and were on the next day found in the defendant's possession, who refused to deliver them up. W. P. McGrew was involved in difficulties for two years preceding his death—dur-

ing which time the plaintiff, as his agent, hired out the slaves for his use and benefit.

The plaintiff, to make out his title, offered the transcript of a report of commissioners appointed by the probate court of Washington county, in the Mississippi territory, to divide the personal estate of Wm. McGrew, duly certified by the clerk of that court; by which it appeared that the slaves in controversy had been allotted to the plaintiff and his brother W. P. McGrew. To the admission of this transcript, the defendants objected, on the ground that it was a mere detached part of the record, and there was no evidence that it had ever been acted on and approved. But the objection was overruled, the transcript read, and the defendants excepted.

Plaintiff proved that the slaves were once the property of of W. P. McGrew, and this was not denied by the defendant, or disproved by the testimony adduced by them. There was also evidence that Mrs. McGrew was in possession of Melissa in the lifetime of her son W. P.—that the latter then told her to keep the slave until he got out of his difficulties, and if he was never relieved, then she was to be the property of his half brother Levin. W. P. McGrew died intestate, and his estate was never administered on. Mrs. Phillips disclaimed in open court any interest in the slaves; and her son Levin, at the time of the trial, was only twenty-three or four years old. 

The evidence having closed, the defendants, by their counsel, prayed the court to charge the jury, that the plaintiff could not maintain this action without first obtaining letters of administration upon the estate of W. P. McGrew, which was denied; and the jury charged that the plaintiff could maintain it upon his possession as heir of his deceased brother and as his bailee, against the defendants, although the case would be different in a controversy between the administrator of W. P. McGrew and the defendants. *Further*, if they believed that W. P. McGrew had made the conditional gift to Levin Phillips while his mother was in possession of Melissa, and that he never afterwards was relieved from his difficulties, or made claim to her, then the gift was valid.

REAVIS, for the plaintiffs in error, cited 1 Ala. Rep. 52; 2

Id. 310; 7 Id. 623; 10 Id. 600; 11 Id. 609; 3 Har. & J. Rep. 493; 4 Id. 310.

R. H. SMITH, for the defendant in error.

COLLIER, C. J.—No question has been made at the bar as to the admissibility of the transcript from the records of the orphans' court of Washington. It appears that after it was admitted as evidence, the plaintiff proved that the slaves in question were once the property of W. P. McGrew; and this was not denied by the defendants, or any testimony adduced by them to disprove it. If therefore the transcript should have been excluded, a question which need not be considered, its admission was rendered perfectly harmless, by evidence subsequently adduced and in effect admitted to be true. We pass then from this point in the case, to consider the questions arising upon the prayers for instruction to the jury, and the charge given.

In response to the first prayer, the county court might with propriety have informed the jury that the legal title to the personal property of one dying intestate does not vest in his distributees, and that the latter can only regularly acquire it through an administrator. 11 Ala. Rep. 609. Such a charge should have been given, if the plaintiff rested his right to recover upon his interest as a distributee. The court did not merely refuse the instruction, but charged the jury that the plaintiff could maintain the action "upon his possession derived as heir of his deceased brother, and as the bailee of his deceased brother." In thus laying down the law, does not the court invade the province of the jury, and forestal their inquiries, by assuming as a postulate, that the plaintiff had the possession of the slaves; and that his possession is referable to his relationship to W. P. McGrew, and to a bailment by the latter, to him? However convincing the evidence may be, it is not for the court to assert its truth; but it is the office of the judge to expound the law— the jury are to ascertain the facts. If the judge refer his duties to the jury, or undertake to perform theirs, in either case he commits an error. 2 Ala. Rep. 310. We think it cannot

33

admit of serious controversy, that the charge is obnoxious to the objection intimated.   If the jury deferred their judgment as to the conclusions inferrable from the facts to the judge, they would have had little elso to do, than ascertain the respective value of the slaves, and assess the damages for their detention.   They were told that the plaintiff had the possession, and it is intimated in no equivocal terms, that his possession was as next of kin and bailee of his deceased brother. These we have seen were conclusions dependent upon facts which the jury should have scanned.

In Traylor v. Marshall, 11 Ala. Rep. 458, it was said the plaintiff in detinue must prove either a general or special property in the chattel, and a right to the immediate possession. A bailee may maintain *detinue* or *trover* against a stranger who takes the goods out of his possession ; and this whether the bailment be general or special, gratuitous or for a reward. So may a factor, or other consignee, pawnee or trustee.   We said further, that in general, possession of a chattel is *prima facie* evidence of property in the possessor ; but if the plaintiff has never had possession of the chattel, or if the contest be not with a mere stranger, but with one who will succeed in his proof of title, unless the plaintiff can prove a better, it is necessary for the latter to resort to strict evidence of title. If therefore the action be brought against a wrongdoer, the mere fact of possession by the plaintiff is usually sufficient evidence of title, although the plaintiff claim under a title which is defective ; for the possession of property is *prima facie* evidence of ownership.   These conclusions, it will be seen by a reference to the authorities on which the opinion of the court is rested, are well sustained.

If, then, the slaves were in the plaintiff's possession under an agency to hire or take care of them, commencing in the lifetime of W. P. McGrew ; or even if he had been in possession of them from 1838 to 1845, as the proof indicates, and they were taken from him by one having no title, he would be entitled to maintain the present action.   The relation of the defendants to W. P. McGrew did not authorize them to disturb the plaintiff's possession, either by enticing or otherwise taking the slaves from him ; and unless they show a superior legal right, they cannot justify their retention, although

they may have had no agency in inducing the slaves to leave the plaintiff.

In respect to the question of a gift by W. P. McGrew to the defendant Levin, it may be quite enough to say that it wants one of the essential elements of a gift—delivery of the thing, or something which the law deems equivalent. The supposed donor does not appear to have parted with his dominion over the slave, but could have reclaimed her at any time up to his death. Taking all the evidence, and giving to it an interpretation most favorable to the defendants, and it merely indicates an intention to give upon a contingency. But the purpose was never consummated—the *locus penitentiæ* was never closed, and no advantage can be claimed from it. 1 Smedes & M. Rep. 428; 3 Stewt. Rep. 121; 1 Stewt. & P. Rep. 56; 2 Port. Rep. 449; 1 Ala. Rep. 52; 2 Id. 117.

An adherence to the views we have laid down, will enable the primary court to dispose of this case understandingly; and we have but to add, that the judgment is reversed, and the cause remanded.