JONES, ADM'R., vs. DEYER & WIFE.

1. A promissory note may be the subject of a gift *inter vivos* or *causa mortis*, but, in either case, an actual delivery to the donee, or to a third person for him, is essential to its validity.
2. If an overseer, employed at a stipulated price per annum, is sick a part of the time, and thus unfitted for active service, the employer may recoupe the damages sustained by the imperfect performance of the contract.
3. It is competent for an executor or administrator to submit to arbitration a controversy in which the estate is concerned.
4. Where, upon final settlement of an estate, a contest arises between the administrator and distributees, as to whether a particular fund is assets of the estate or belongs to the administrator individually, and a decision is made in favor of the distributees, the administrator is personally liable for the costs of the proceeding.
5. If distributees except to the administrator's account, and seek to charge him beyond the amount with which the administrator has debited himself, but fail to produce any evidence in support of the exception, it is proper to charge them with the costs consequent thereon.

Error to the Orphans' Court of Limestone.  Tried before the Hon. Wm. H. Walker, Judge.

THE plaintiff in error, as administrator, with the will annexed, of Patrocleus Lewis, deceased, rendered his accounts and vouchers to the Orphans' Court of Limestone for a final settlement of his administration.  The defendants in error, Andrew J. Deyer and Jane his wife, the latter of whom is the daughter of the said Patrocleus Lewis, and sole legatee under his will, denied the correctness of the administrator's account, and suggested; 1st, that he had failed to charge himself with the sum of $1200, being a balance on a note or bond for a large amount, made by one Samuel Jordan, deceased, in

his life time to said Patrocleus Lewis, and which the latter left as a part of his assets at the time of his death: 2d, that the said Patrocleus Lewis was the overseer of the plaintiff and Eliza Jordan executrix of said Samuel Jordan for the years 1842, 1843, and until his death in August 1844, at a salary of $500 per annum, and that said administrator had charged himself with $250 only per annum, when he should have charged himself with $500 per annum. A number of depositions were taken by each party, from which the following facts may be gleaned: Patrocleus Lewis in his life time, frequently expressed great regard for the plaintiff in error on account of his and his father's kindness to him: on the night before his death, Dr. Achilles Whitlock, his attending physician, was engaged with him in looking over his (Lewis') papers in a room of the said Eliza Jordan's house, where said Lewis lived: after being thus engaged for some time, Dr. Whitlock carried to Mrs. Jordan, who was in another room, the note or bond of said Samuel Jordan, her testator, with a credit of $1200 endorsed on it, and signed "A. W. per instruction of P. Lewis," and at the same time presented to her a sealed note for $1200, payable to Samuel J. Jones, the plaintiff in error, which he requested her to sign, and which she did. Dr. Whitlock had died some time before the trial, and although Jones boarded at the same house with Lewis, was frequently with him and very attentive to him, it does not appear whether he was in his room at the time of this transaction, or how or when he came into the possession of Mrs. Jordan's note, further than that he had possession of it after he assumed the administration of the estate. Patrocleus Lewis had been the overseer of Samuel Jordan before Jordan's death, at a salary of $500 per year, and after his death superintended the plantation belonging to his estate, as well as the plantation of the plaintiff in error, in 1842, 1843, and until his death in 1844, but he was never employed by Mrs. Jordan, the executrix of Samuel Jordan. During the years named, Lewis was in very bad health, so much so, as to be incapable of attending to regular business, and was often confined to his bed. A witness examined by the defendants in error stated, that since this controversy arose, the plaintiff in error told him, that Lewis was getting $500 a year for man-

aging the places of Jordan and plaintiff, but all the witnesses who gave an opinion on the subject testified, that in his then state of health, $250 a year, was a full and fair compensation for his services. It also appears that the plaintiff in error and Mrs. Jordan submitted the question as to the amount of Lewis' compensation to the arbitration of two persons, who fixed it at $250 per annum.

The court charged the administrator with the $1200, with $150 per year, in addition to the sum, with which he had already charged himself, for the services of Lewis as overseer, and with the entire costs of the proceedings: each of which is now assigned as error.

C. C. CLAY, Jr. for the plaintiff:

1. There can be no doubt that Achilles Whitlock entered the credit on Samuel Jordan's note and wrote the new note of Mrs. Jordan, as the agent of Lewis. An agent may be created verbally, and agency may be infered from the relation of the parties and the nature of the employment. 2 Kent's Com. 613–14; 11 Mass. 97; 15 East, 400.

2. The mere possession of the note is *prima facie* proof of Whitlock's authority to enter the credit. Erick v. Johnson and Trustee, 6 Mass. 193–6.

3. The gift by Lewis was not a *testamentary* act—it did not require the assent of an executor to perfect it—nor a *donatio mortis causa:* Lewis could not have revoked it or recovered it by suit at law or bill in chancery, had he lived and attempted to do so. A party cannot deny his own deed, save for fraud or mistake in the execution of it. Whether a gift or a contract, it was *executed* by Lewis in his life time—he could not have disposed of it by will. If a gift, it was perfected by delivery to Jones, or to Whitlock for him, or by what was equivalent thereto—even if the possession remained with the grantor, it was irrevocable. Smith v. Wiggins, 3 Stew. 121; McCutchen v. McCutchen, 9 Port. 650; Sims v. Sims, adm'r 8 Port. 449; 2 Kent's Com. 440; Sewall by next friend, v. Glidden, 1 Ala. Rep. 59.

4. Sickness prevented Jones from performing his duties as an overseer, and it was charitable forbearance on the part of Mrs Jordan to suffer him to stay on the place. In this view of the

facts, the case of Martin v. Everett, 11 Ala. Rep. 375, is inapplicable.

5. It was advantageous to the heirs of Lewis to arbitrate with Mrs. Jordan the question of his wages, for the proof shows that he could not have recovered as much as $250 per annum by sueing her, and therefore it should have been sanctioned by the court. 1 Lomax's Ex'rs, 356; 1 Brock. 228; 6 Leigh, 487.

6. The court should not have charged the administrator with the *costs* of the settlement, unless he was guilty of a *devastavit*, or of laches in his settlement. He did settle his administration within a reasonable time after taking letters of administration. As a general proposition, an administrator is entitled to his costs. 9 Porter, 667; 7 Ala. 617. If he is not chargeable with the $1200 or $400, then there is no imputation or room for imputation of an abuse of his trust. Besides, the court allowed him the usual commissions, yet charged him with the costs of settlement, which is irreconcilable. If he deserved commissions, he certainly was not chargeable with costs.

Wm. Cooper, for defeudants.

COLLIER, C. J.—1. It has been so often decided as to have become a legal axiom, that it is indispensable to a *parol* gift of a chattel, that there should be an actual delivery of the thing. Sims v. Sims' adm'r 2 Ala. Rep. 117, and cases there cited; Easley v. Dye, 14 Ala. Rep. 158; Pitts v. Mangum, 2 Bailey's Rep. 588; Fowler v. Stuart, 1 McC. Rep. 504; Ewing v. Ewing, 2 Leigh's Rep. 337; Pearson v. Pearson, 7 Johns. Rep. 26. To constitute an effectual delivery, the donor must part with the dominion of the thing in favor of the donee. A bare intention to give, no matter how decidedly formed or how often expressed, is insufficient to invest the intended donee with a title. Phillips v. McGrew, 13 Ala. Rep. 255. In Gragniac v. Arden, 10 Johns. Rep. 293, a father bought a ticket in a lottery, which he declared he gave to his infant daughter E., wrote her name upon it, and after the ticket had drawn a prize, he still declared that he had given it to his child E., and that the prize money was hers: this was held

Jones, adm'r, v. Deyer & Wife.

sufficient for a jury to infer all the formality requisite to a valid gift, and that the title to the money was vested in the daughter. Where there are circumstances which raise a doubt whether the donor who still retains possession of property did not intend to part with all control over it, the case should be left to the jury. McGinney v. Wallace, Riley's Rep. 290.

When a gift of personal property is made by deed, the delivery of the deed is sufficient though the donor does not part with the possession of the property. McRae, adm'r v. Pegues, adm'r, 4 Ala. Rep. 158; Newman v. James and Newman, 12 Ala. Rep. 29. A valid gift may be made *inter vivos* of a promissory note payable to the order of the donor by delivery merely, without endorsement or other writing. Grover v. Grover, 24 Pick. Rep. 261: In Elam v. Keen, 4 Leigh's 333, the owner of a bond which was in suit, and for which he held the attorney's receipt, told plaintiff that he might have the bond, and delivered him the attorney's receipt for it, instead of the bond itself, which was then filed in the suit in court. No consideration was given by the plaintiff for the bond: *Held*, that this was a valid gift, and that the plaintiff was entitled to the money collected on the bond.

So it is essential to a gift *causa mortis*, that there should be an actual delivery, but it may be made to a third person for the use of the donee, if the third person retain the possession up to the time of the donor's death. Borneman v. Sidlinger, 3 Shep. Rep. 429: See Holley v. Adams, 16 Verm. Rep. 206; Windows v. Mitchell, 1 Murph. Rep. 127; McDowell v. Murdock, 1 N. & McC. Rep. 237; Raymond v. Sellick, 10 Conn. Rep. 480; Nicholas v. Adams, 2 Whart. Rep. 17. Where one person made a note and delivered it to a third, to be delivered to the payee after the maker's death, it was held that it was not a good *donatio causa mortis*, because there was no delivery. Bowers v. Hurd, 10 Mass. Rep. 427. In Parish v. Stone, 14 Pick. Rep. 198, it was decided that the donor's own promissory note could not be the subject of a *donatio causa mortis*. But in Wright v. Wright, 1 Cow. Rep. 598, the testator in his last illness, and in expectation of death, made and delivered his note without consideration intending it as a gift: *Held*, that it was valid as a *donatio causa mortis*, and the payee might

20

sustain an action thereon against the executor of the maker. See Wells v. Tucker, 3. Binn. Rep. 366; Holley v. Adams, *supra*.

Conceding that Dr. Whitlock in taking the note of Mrs. Jordan payable to the plaintiff in error, and in endorsing a credit on the note of her testator to a corresponding amount, acted by the intestate's directions, and still there is an absence of evidence to show a delivery of the note to the plaintiff, or any one for him. So that whether we consider the change of security by the new note, and extinguishment *pro-tanto* of the old one, as a *pure gift*, or *donatio causa mortis*, it is alike incomplete and ineffectual—the transaction wants the indispensable element of delivery. It may be that the intestate under the influence of grateful feelings, intended to make the plaintiff the beneficiary of his bounty, or under a sense of moral duty he may have desired to make the plaintiff the dispenser of his bounty to others (of which there is some intimation in the record). However this may be, it is unnecessary even to conjecture, as he consummated neither of the purposes, nor did any act which invested the plaintiff in his individual right with a title to the note of Mrs. Jordan, or its proceeds. The beneficial interest in that note was vested in the administrator as such, and if necessary he could sue in the payee's name generally, or for the use of himself as administrator, but no matter by what form of proceeding he collected the money, he would hold it as assets of the estate he represented. This is so clear a sequence from the citations we have made and the evidence recited in the record, that it is needless to add more upon the point.

2. The only evidence that the price of Lewis' wages was stipulated, is drawn from the testimony of B. L. Bennett, who was examined as a witness against the administrator. He states that Lewis was overseer of the hands which belonged to S. Jordan, deceased, in 1842, '43, and '44, to August of the latter year, when he died; that the administrator told him in 1848, that he, (Lewis) "was getting $500 for overseeing the places" of Jordan and his, (the administrator's) plantation. Mrs. Jordan who was the executrix of her husband, admits that Lewis lived upon the plantation from 1842 until his death, but affirms, that he was not employed as an overseer by her.

She also states that she heard Lewis say, that one hundred dollars should be deducted from his yearly wages: All the witnesses concur that his health was bad, and perhaps the most of them state that he was often confined to his bed from 1842, up to the time of his death—some times for weeks or months; that his services were worth but little—not more than his board and the services of the negro man who attended him: all which were furnished him by Mrs. Jordan. Upon this evidence the Orphans' Court was not authorised to charge the administrator of Lewis with four hundred dollars a year for 1842 and '43, and at that rate up to the period of his death in 1844. Certainly, the sum with which the administrator charged himself in the account rendered, was quite enough to compensate the services of his intestate. Even conceding that the price at which the intestate was first employed, was five hundred dollars a year, and still it was competent to recoup the damages for that and the succeeding years, by evidence that bad health disabled him to perform active duty, or efficiently devote himself to the business of his employer. In Hunter v. Waldron, 7 Ala. Rep. 753, it was decided, that where an overseer employed at a stipulated sum *per annum*, is sick a part of the year, so as to unfit him for active duty, but he is permitted to remain in the service of his employer up to the end of the year, he is entitled to a *pro rata* compensation. If the employer has been injured by the imperfect performance of the overseer's undertaking, the damages may be recouped, so as to compensate the injury. Here is a case directly in point, and it furnishes a complete answer to the argument, that to entitle the administrator to reduce the recovery against him below the stipulated wages, it should appear not only that his intestate lost time by sickness, but was dismissed from service.

It is needless to consider the effect of the arbitration between Mrs. Jordan and the administrator, for the purpose of adjusting the intestate's compensation; or whether as the interest of both of them required the smallest sum to be agreed on, the award is not invalid—*there being no real controversy.* As a general rule, it is clearly competent for an executor or administrator to submit to arbitration any controversy concerning the estate, whether the claim be for or against it. 1 Lomax on Ex'rs, 356.

3. Mr. Lomax in his treatise on the law of executors, &c. (1 vol. 124,) says, it is stated in the English books to be only under special circumstances, that the Ecclesiastical Court directs costs to be paid out of the estate of the deceased, and that it is only in modern times that the court has found itself authorised to do so. It does not follow that a party is entitled to his costs out of the estate, because there was *jus causa litigandi;* but the principle which guides the court in decreeing such costs is, that the party was led into the contest by the state in which the deceased left his papers : *Further,* the general rule is, that executors and administrators who conduct themselves fairly are entitled to costs ; but where there is misbehaviour on their part, they shall not be allowed costs out of the estate in their hands. So if a suit is occasioned by the negligence of the executor or administrator, the estate shall not be charged with the costs. 2d vol. Id. 501.

In civil actions the successful party in this State, is entitled to full costs, except where it is otherwise directed by law. Clay's Digest, 316 § 20. In a court of equity, the costs shall be paid by either party at the discretion of the court. Id. 350 § 26. The estate of a deceased person is made chargeable with the costs and expenses of settling the same. Id. 191 § 1.

It must be admitted that the citations from the English law and our statutes are neither directly in point, yet they furnish analogies, more pertinent perhaps, than any that have fallen under our notice. In respect to Mrs. Jordan's note for twelve hundred dollars, it was not returned in the account of the administrator as part of the assets of his intestate's estate; and upon exception to the account in this particular, he denied that it belonged to the estate, but insisted that it was his individual property under a gift from his intestate. The controversy which grew out of this exception, so far from being beneficial to the estate, if the administrator was successful, was directly the reverse; it was in fact a litigation in which the administrator and legatee were personally and individually interested. If the former succeeded he would gain the amount of the note and interest, and thus far the estate would be diminished, but if the latter recovered, she would charge the administrator to the extent of her recovery. The result was to falsify the administrator's account and to determine

the right of the legatee to be paramount to his; as he did not defend the interests of the estate thus far, he should not be allowed by the Orphans' Court to retain his costs from the assets.

The costs consequent upon the exception to the *debit* of two hundred and fifty dollars, as the amount of the annual wages of the intestate should be charged to the legatee, if for no other reason, because the exception was not sustained by evidence.

We know of no other mode of adjusting the costs of the proceedings in the Orphans' Court, so equitable as that we have stated. True, it may be difficult to ascertain with exactness which of the witnesses should be paid by the one party or the other; but this difficulty grows out of the case, and must be settled by the primary court, subject to revision to some extent by an appellate court. That a decree may be rendered according to the principles we have laid down, the decree is reversed, and the cause remanded.