*Orphans' Court, Dauphin County, February 19th, 1869.*

IN THE MATTER OF PARTHIMER'S ESTATE.

When a decedent had promised his sons to make them a gift of certain bonds, some six or seven years before his death, but did not actually make the gift until nine days before he died, and when he was probably *in extremis,* it would seem that it was a *donatio causa mortis,* and not *inter vivos ;* but whichever it was, the widow is not entitled to have them brought into the administration account, and to get her third of them ; she is only entitled to a distributive share of the personal property belonging to her husband at the time of his death ; *donatio causa mortis,* if valid, takes effect from the time of the donation, and not from the time of the death.

BY THE COURT.—The report of the auditor presents a single question,—is the widow of John Parthimer, deceased, entitled to a distributive share of a bond given to him by John Kendig, for five hundred dollars, and to a like interest in four hundred dollars of government securities, under the facts disclosed? The auditor reports that Parthimer, long before his death, had an arrangement with his two sons to give them these two securities for the use of themselves and the other children; that such gift had often been promised, as much as six or seven years back, but was never carried into effect until nine days before his death, and during his last illness, when he was probably *in extremis,* though whether that was known to himself does not appear. He then, by writing, under his hand and seal, indorsed on the bond, assigned it over in due form to G. W. and W. A. Parthimer, stating it to be for value received, and, at the same time, handed them over the ordinary bonds of the United States, amounting to $400; both securities were delivered, and remained in possession of the sons until after the father's death. The bond of Kendig was afterwards paid to Augustus Parthimer, the administrator, and the government securities are still held by them, and both are claimed as gifts from the father in his lifetime. The auditor, in his report, finds that the obligations were gifts, as claimed, but whether *inter vivos* or *causa mortis,* he does not report. Exceptions were taken to the account by the widow, because the money was not brought into the course of administration. If the gift was valid and passed the title, the amount was properly left out of the administration account, as it formed no part of the decedent's estate at the time of his death, but vested in the donees prior to that event.

It has every requisite to make it a good *donatio inter vivos.* The bond was formally assigned and delivered, the title to the instrument and right to receive the money passed thereby to the donee. The government securities were handed over, with proper words of gift, and the interest therein vested at once. No formal assignment of such obligations is ever made or required. They

[In the Matter of Parthimer's Estate.]

pass as money (2 Redfield, 309, 312; 1 Roper, 35). No words were used showing that the donation was conditional or the instruments to be restored in case John Parthimer recovered. We do not know what more could be done to make the gift valid, *inter vivos*. But it is said that every donation of property must be considered as *causa mortis*, provided it is given by a person when sick or in expectation of death from any cause, and the event proves fatal to the donor. Such gifts of chattels are said to be made by a person in his last sickness, or *in periculo mortis*, subject to the implied condition that if the donor recover or if the donee die first, the gift shall be void (11 Harris, 63; 3 Binney, 370). We are inclined to think that the gift should be treated as a *donatio causa mortis* or *inter vivos*, according to the intention of the donor as expressed at the time or shown by all of his acts; and the fact of his not surviving should not be treated as conclusive that it was a *donatio causa mortis;* but some of the writers of undoubted authority speak of it as a legal presumption in the absence of any proof of actual intention. Some of the facts connected with this gift would indicate that it was *inter vivos*, as agreeing to make it many years before, when the donor was in good health. On the other hand, the actual donation is postponed until he is *in extremis*. Yet there was no condition of revocation expressed in the gift (2 Redfield, 299). On the whole, if obliged to decide on the evidence submitted, we should say that these obligations passed as a *donatio causa mortis*. But as we understand the law, the question is immaterial. The widow can only recover her distributive share out of the personal effects of which her husband was possessed at the time of his death, " remaining after paying his debts," and such property as goes into a course of administration. This, if given away in his lifetime, never went into the hands of his administrator, for it is clearly settled in the United States by various courts, our own among the number, that the *donatio causa mortis*, if valid, goes into effect from the time of the donation, not from the death of the donor (1 Roper, 32; 2 Wh. 17).

Although a gift *causa mortis* may be revoked during the lifetime of the donor, it cannot be done by will, as that does not go into effect until after death (2 Redfield, 320, 321; 2 Wh. 17; Prac. in Chancery, 309; 3 Barlow's Ch. 116; 3 Cavis, 121; 2 Gill & John, 209; 16 Ala. 225).

The position mainly relied on by the widow is that this gift was in fraud of her marital rights, made for the avowed purpose of cutting her out of her distributive share of her husband's personal effects, and to show that such a meditated deprivation may be avoided, we are referred to Killinger *v.* Smith's Administrator (6 S. & R. 531). The principles settled in that case have always been recognized as sound, but have they any application here?

[In the Matter of Parthimer's Estate.]

It must be borne in mind that the widow is entitled to dower out of any and all bonds whereof her husband was seized at any time during the coverture, of which she cannot lawfully be deprived, except by her own act or the due operation of the law fairly enforced, not brought about by fraud.   In England and most of the States, she could not be cut out by a judicial sale, unless she had herself executed the instrument of deprivation in the mode prescribed.   In Pennsylvania, lands were very early made chattels for the payment of debts.   But for more than a century the wife was not considered as having a *vested interest* in her husband's personal property in Pennsylvania.   She could be deprived of her distributive share therein by will, until the passage of the act of April 11th, 1848.   Under the statute she must claim through the administrator, can only demand distribution of what is left in the due course of administration.   The donee's claim by title is paramount.   The gift took effect before death, and the property did not pass to the administrator.   In Massachusetts, where they have a similar statute, Chief Justice Shaw says, in 13 Gray, 418, " Such gifts, if confirmed and held good, do not impair the rights of the widow.   Her right is to the property of which the husband died seized or possessed.   These gifts have their full effect in the lifetime of the donor."   To construe our statute otherwise would be to deprive the husband of control over his personal effects during the whole of his married life; for if he could not give away a chattel on his deathbed without the consent of his wife, he could not do it at any prior period.   It might, in all cases, be construed to have been given in fraud of her marital rights.   The statute should not be considered as taking away the common law right of control beyond its letter.   It is a recognized maxim that statutes shall be construed as nearly in consonance with the common law as the words will bear.

Gifts of property in fraud of creditors may always be avoided by the persons intended to be defrauded ; but the wife here must claim *through* her husband, not *paramount,* as do creditors.   She can only demand the effects, where the administrator could claim and demand them.   Her title is through him to that which must be brought into a course of distribution.

The auditor made a proper disposition of the question, and his report must be confirmed.