DUNN, *Appellant,* v. THE GERMAN–AMERICAN BANK; TITTMAN, *Public Administrator, Interpleader.*

DIVISION ONE.

1. **Donatio Causa Mortis.** Where a short time prior to death decedent hands a certificate of deposit to another for safe keeping, requesting him to see that decedent's children got the money in case he died, there is not a valid gift *causa mortis.*

2. ———: RIGHTS OF CREDITORS. A donee *causa mortis* takes title to the property subject to the contingent right of the administrator to reclaim it for the payment of the donor's debts.

3. ———: DOWER. A gift *causa mortis* made for the purpose of depriving the widow of her dower in the donor's personalty, is invalid.

4. ———: QUESTIONS FOR JURY. In determining the validity of a gift *causa mortis,* all questions regarding the fact of delivery as well as of the capacity in which the person who receives the property holds it are for determination by the jury.

5. **Public Administrator:** COLLATERAL ATTACK. The right of a public administrator to take charge of an estate cannot be collaterally questioned.

*Appeal from St. Louis City Circuit Court.*—HON. GEO. W. LUBKE, Judge.

AFFIRMED.

*Eber Peacock* for appellant, Thomas Dunn.

(1) The language of the donor in making the gift, coupled with the delivery of the certificate of deposit to Thomas Dunn made a complete *donatio causa mortis*, notwithstanding the paper was not indorsed, and such delivery conveyed to the donee the title to the property given for the purpose indicated by the donor. *Trorlicht v. Weizenecker*, 1 Mo. App. 482; *Wright v. Wright*, 1 Cow. 598; *Contant v. Schuyler*, 1 Paige Ch. 316; *Nelson v. Sudiek*, 40 Mo. App. 342; *Shackelford v. Brown*, 80 Mo. 546. The gift and delivery in this case was of the chose in action, the declaration of the donor being, "Take this certificate, and, in case anything should happen to me, draw the money and hold it for the children." This was a gift and delivery *in praesenti*, subject to be revoked by the donor's recovery. *Hassell v. Basket*, 7 Cent. Law, 308; *Harris v. Clark*, 2 Barb. Sup. Ct. Rep. 94; *Dole v. Lincoln*, 31 Mo. 422. (2) The German–American Bank at its peril refused payment of the certificate of deposit when presented to it by Thomas Dunn at its maturity, and the fact that it was not indorsed did not entitle it to the aid of a bill of interpleader for its protection, the proof shows that it was long after the maturity of the paper and after the bank had been sued that at its instance the public administrator interposed. The bank had a complete and adequate remedy at law; it could make a complete defense to the action of Mr. Dunn against it, and, therefore, had no right to invoke the aid of a court of equity. *Beadle v. Ramsey*, 52 Mo. 153. (3) The public administrator had no authority to intervene, even had John T. Dunn left property at his death subject to administration, for the reason that he had

two brothers residing here at the time of his death and both of them in business with him and entitled to administer. R. S. 1879, secs. 7–57, pp. 3–10. (4) The authority of the public administrator to act is purely statutory. It is only when he can bring himself within some of the six subdivisions of section 306, Revised Statutes, 1879, that any power exists in him to administer; none of the first five subdivisions would apply in this case, and the sixth requires an order of court to confer authority, and none existed. R. S. 1879, sec. 306, p. 45; *State to use of Ranney v. Green*, 65 Mo. 528.

*S. N. Taylor, H. M. Pollard* and *Solon N. Sapp* for Tittman, interpleader, respondent.

(1) The delivery of the certificate by John to Thomas Dunn was not a *donatio causa mortis*. Delivery is essential to a gift, and whether it be *inter vivos* or *causa mortis* there must be not only an actual handing over, but also an intent to transfer the right of property and possession. *Walter v. Ford*, 74 Mo. 198; *McCord v. McCord*, 77 Mo. 173; *Nicholas v. Adams*, 2 Whart. 17; *Basket v. Haskell*, 107 U. S. 602; *Johnson v. Stevens*, 22 La. Ann. 144; *Housman v. Millett*, 55 Me. 184; *Carleton v. Lovejoy*, 54 Me. 445; *Egerton v. Egerton*, 2 C. E. Greene, 419; *Bushman v. Hogart*, 28 Ind. 449; *Peeler v. Guilesy*, 27 Tex. 355; *Curry v. Curry*, 30 Ga. 257; American Law of Administration, pp. 121–2. (2) A gift *causa mortis* is as much within this rule as if it were absolute. There must be such a delivery as passes the right of property and possession. *McCord v. McCord*, 77 Mo. 173; *Irons v. Smallpim*, 2 B. & Ald. 551; *Basket v. Haskell*, 107 U. S. 602; *Walter v. Ford*, 74 Mo. 198. (3) Gifts *causa mortis* are subject to a defeasance by the donor's restoration from danger; nevertheless, the title and ownership of

the property must pass at the time of delivery and not
be intended to pass at the donor's death, else the gift is
void. *Walter v. Ford*, 74 Mo. 198; *McCord v. McCord*,
77 Mo. 173; *Duncan v. Duncan*, 5 Little, 12; *Walden v.
Dixon*, 5 Mon. 170–1; *Basket v. Haskell*, 107 U. S. 602.
(4)   The foregoing authorities establish the principle
that a *donatio causa mortis* is an executed gift, *inter
vivos*, upon an implied condition subsequent. *Walter
v. Ford*, 74 Mo. 198; *McCord v. McCord*, 77 Mo. 173;
*Nicholas v. Adams*, 2 Whart. 17; *Chase v. Redding*, 13
Gray, 422; *Parish v. Stone*, 14 Pick. 203; *Mitchell v.
Smith*, 10 Law Times (N. S.) 520.   (5)   All questions
as to the fact of the delivery, and of the character in
which the person receiving it holds the property, are
for decision by the jury, precisely as any and all other
facts arising in actions at law. *Hunt v. Hunt*, 119 Mass.
474; *Clough v. Clough*, 117 Mass. 85; *Jones v. Deyer*,
16 Ala. 221, 224, 225.   (6)   The only way the bank
could protect itself, when the fund in its hands was
demanded by two persons, was to bring it into court,
making both claimants parties to the judicial proceed-
ing.   *Glaser v. Priest*, 29 Mo. App. 1; *Stillwell v. Ins.
Co.*, 2 Mo. App. 22; *Monks v. Miller*, 13 Mo. App. 363.
(7)   "A gift *causa mortis* is not valid against the claims
of creditors.   They have claims superior to volunteers."
*Ward v. Turner*, 2 Ves. 434; *Drury v. Smith*, 1 Pr.
Wms. 406; *Chase v. Redding*, 13 Gray, 418; *Boreman
v. Sidlinger*, 15 Me. 429; 2 Kent, 362.

SHERWOOD, P. J.—On August 6, 1887, the defend-
ant bank issued its certificate of deposit to John T.
Dunn, payable at six months.   Within three months
thereafter Dunn died intestate, leaving a widow and
two children surviving him in Cork, Ireland.

On March 17, 1888, the plaintiff sued the bank on
said certificate; his petition, omitting formal portions,

being as follows:    That on the sixth day of August, 1887, one John T. Dunn deposited in said defendant bank the sum of $2,639, and received therefrom a certificate of such deposit, duly signed by the cashier of said bank, in words and figures as follows, to-wit:

" $2,639.00.                GERMAN–AMERICAN BANK. ⎫
" Due February 6, 1888.    ST. LOUIS, August 6, 1887, ⎬

"John T. Dunn has deposited in this bank twenty-six hundred and thirty-nine and no hundredths dollars, payable to the order of himself on the return of this certificate, six months after date, value received.

 "No. 14126.

 "[Signed]                C. E. KIRCHER,
           " Cashier."

Plaintiff states that in and by said certificate of deposit, which is herewith filed and marked Exhibit "A," said defendant bank bound itself to pay on the sixth day of February, 1888, the said sum of $2,639 to the order of John T. Dunn on the return of said certificate.

Plaintiff further states that on or about the —— day of November, 1887, the said John T. Dunn, being then ill of a disease of which he shortly thereafter died, and being aware of the fatal character of his sickness, and in anticipation of his death, took said certificate of deposit and made a gift thereof to and delivered the same to plaintiff, stating at the time that he was to take said certificate and hold the same and the money to be collected therefrom in trust, for the use and benefit of his, said John T. Dunn's, children; said children being then and now minors, under the age of eighteen years; that said plaintiff thereupon received said certificate from his said brother, said John T. Dunn, and took the same into his possession, and has ever since had the same in his custody and control.

Plaintiff further states that at the maturity of said

certificate the same was presented to the said defendant bank, and payment thereof was demanded of the teller and cashier thereof; but the same was refused, and is yet unpaid. Plaintiff prays judgment against said defendant for said sum of $2,639 with interest thereon, at the rate of six per cent. per annum since the sixth day of February, 1887, and for judgment for costs.

The widow of deceased in Ireland wrote to Mr. Sapp, requesting him to take steps to obtain the money for herself and children; and he requested Tittman, public administrator, to take charge of said estate, which he did on April 16, 1888, and demanded of the bank the fund in question. Meantime, Thomas Dunn had sued the bank to recover the fund.

The bank filed an answer and bill of interpleader, stating the facts that the fund was claimed by Thomas Dunn as a gift *causa mortis*, and that it was also claimed by Tittman, as public administrator, in charge of the estate of John T. Dunn, deceased, and also containing all other proper allegations for a bill of interpleader. It prayed for an order of court making said public administrator a party, and for leave to pay the fund into court, and for a return of said certificate of deposit to it, and that said Thomas Dunn and said public administrator be required to interplead as to said fund. These orders were made. The fund was paid into court by the bank, and the bank discharged.

July 5, 1888, Tittman, as public administrator of the city of St. Louis, filed his interplea in said cause, duly sworn to. The plaintiff answered, traversing whatever was material to be denied, and claiming that he was entitled to said certificate because the same was delivered to him by his deceased brother, in trust, for the use and benefit of said John T. Dunn's minor children. The interpleader filed a general denial of this answer.

The evidence herein all tended to show that the certificate in litigation was only delivered by the decedent to his brother, the plaintiff, for safe-keeping, accompanied by a request that if decedent died the plaintiff should see that decedent's children got the money. This phase of the matter appears very conspicuously in the testimony of Jennings, who, after testifying that he told the deceased of his impending dissolution, proceeds then to state that deceased thereupon "told me to go down and get his brother Tom, and I went down and got his brother Tom. I came right up with him into the room again. 'Tom,' he says, 'you go down to the pocket of my alpaca coat and you will find a bank certificate there, and bring it up.' The man was very sick; he could hardly speak. So Tom went down and brought up the certificate, and says he, 'John, here is your certificate,' so he looked at it and read it, and he says, 'You take this certificate and keep it,' and he says, 'In case anything might happen to me, or should happen to me, you draw this money and save it for my children—keep it for my children.' " Thereupon the decedent handed the certificate to the plaintiff, who took it into his possession.

This witness says he understood that Tom, the plaintiff, was to keep the certificate, and in case his brother did not get well then Tom was to get the money for the children, and this was the way plaintiff understood it, as shown by his admission made after his brother's death, and after he had made several vain attempts to obtain bondsmen to go on his bond so he could take out letters of administration on his brother's estate. The testimony of Patrick Dunn in his deposition does not materially differ from that of Jennings.

At the conclusion of the testimony, the court gave the following instructions: "The court instructs the jury that, if they believe from the evidence, that John

Dunn, deceased, handed to Thomas Dunn the certificate in question to be held by him as the agent of John Dunn, until he got well or died, and that said Thomas Dunn received said certificate for such purpose, and that it was not the intent of said John Dunn that the delivery to said Thomas Dunn should pass the title to him, unless and until said John Dunn died, then you will find in favor of the public administrator, Eugene C. Tittman, and against said Thomas Dunn.''

'' The court declares the law to be that a person in a dying condition may make gifts of his personal property, such gifts being made in anticipation of death. And if the jury believe from the evidence that John T. Dunn was the owner of the certificate of deposit mentioned, and about the middle of October, 1887, was ill of a disease of which he shortly thereafter died, and that he was aware of the possible fatal termination of his disease; that in anticipation of such possible fatal termination he delivered said certificate of deposit to his brother Thomas Dunn, to be held by him for the benefit of his minor children; that said Thomas Dunn then and there received said certificate of deposit, and thereafter held it until delivered up in this court; that said John T. Dunn shortly after such delivery died of said disease, then the court declares that the said Thomas Dunn acquired title to said certificate and is entitled to recover in this action, and you should find for him as defendant in the interplea of Tittman, administrator.''

The jury thereupon returned a verdict for the interpleader, and the plaintiff appeals.

I.   The instructions already set forth are all that were necessary for the information of the jury.   The question in such cases as this one is not only whether there has been a delivery, but also an *intent* to transfer the right of property and the possession.   The certifi-

cate in this instance was not indorsed; but if it had been in the language employed by the witnesses to this transaction, such language would not have been materially variant in its legal purport and effect from the indorsement on a similar certificate in *Basket v. Hassell*, 107 U. S. 602, where the indorsement was:

"Pay to Martin Basket of Henderson, Kentucky; no one else; then not till my death. My life seems to be uncertain. I may live through this spell. Then I will attend to it myself.          H. M. CHANEY."

It was claimed in that case that the delivery of the certificate with the indorsement aforesaid, having been made by Chaney to Basket, constituted a valid *donatio mortis causa*, and, therefore, entitled the latter to the fund in suit. But the administrator of Chaney's estate, Hassell, having filed his bill in equity, Basket answered and asserted his title to the fund by cross-bill, and final decree went in the lower court in favor of the administrator, and on appeal this decree was affirmed. Mr. Justice MATTHEWS in delivering the opinion of the court, among other things remarking: "A *donatio mortis causa* must be completely executed, precisely as required in the case of gifts *inter vivos*, subject to be divested by the happening of any of the conditions subsequent, that is, upon actual revocation by the donor, or by the donor's surviving the apprehended peril, or outliving the donee, or by the occurrence of a deficiency of assets necessary to pay the debts of the deceased donor. These conditions are the only qualifications that distinguish gifts *mortis causa* and *inter vivos*. On the other hand, if the gift does not take effect as an executed and complete transfer to the donee of possession and title, either legal or equitable, during the life of the donor, it is a testamentary disposition, good only if made and proved as a will.

"This statement of the law is, we think, correctly deduced from the judgments of the highest courts in England and in this country; although, as might well have been expected, since the early introduction of the doctrine into the common law from the Roman civil law, it has developed, by new and successive applications, not without fluctuating and inconsistent decisions. * * * A delivery, in terms, which confers upon the donee power to control the fund only after the death of the donor, when by the instrument itself it is presently payable, is testamentary in character, and not good as a gift. Further illustrations and applications of the principle may be found in the following cases: *Powell v. Hellicar*, 26 Beav. 261; *Reddel v. Dobree*, 10 Sim. 244; *Farquharson v. Cave*, 2 Coll. C. C. 356; *Hatch v. Atkinson*, 56 Me. 324; *Bunn v. Markam*, 7 Taunt. 224; *Coleman v. Parker*, 114 Mass. 30; *Wing v. Merchant*, 57 Me. 383; *McWillie v. Van Vacter*, 35 Miss. 428; *Egerton v. Egerton*, 17 N. J. Eq. 419; *Michener v. Dale*, 23 Pa. St. 59.

"The application of these principles to the circumstances of the present case requires the conclusion that the appellant acquired no title to the fund in controversy, by the indorsement and delivery of the certificate of deposit. * * * The indorsement which accompanied the delivery qualified it, and limited and restrained the authority of the donee in the collection of the money, so as to forbid its payment until the donor's ¦death. The property in the fund did not presently pass, but remained in the donor, and the donee was· excluded from its possession and control during the life of the donor. That qualification of the right which would have belonged to him if he had become the present owner of the fund establishes that there was no delivery of possession, according to the terms of the instrument, and that, as the gift was to

take effect only upon the death of the donor, it was not a present executed gift *mortis causa*, but a testamentary disposition. The right conferred upon the donee was that expressed in the indorsement; and that, instead of being a transfer of the donor's title and interest in the fund, as established by the terms of the certificate of deposit, was merely an order upon the bank to pay to the donee the money called for by the certificate upon the death of the donor. It was, in substance, not an assignment of the fund on deposit, but a check upon the bank against a deposit, which, as is shown by all the authorities and upon the nature of the case, cannot be valid as a *donatio mortis causa*, even where it is payable *in præsenti*, unless paid or accepted while the donor is alive; how much less so, when, as in the present case, it is made payable only upon his death."

In that case it is to be observed when speaking of *Wright v. Wright*, 1 Cow. 598, relied on by plaintiff, that the latter case is expressly disapproved, and a number of cases are cited as supporting a like disapproval, among them *Harris v. Clark*, 3 N. Y. 93, where *Wright v. Wright* was distinctly overruled.

The case of *Basket v. Hassell* finds full support in *Walter v. Ford*, 74 Mo. 198, and *McCord's Adm'r v. McCord*, 77 Mo. 173, as well as other authorities cited for the interpleader. Under the provisions of our statute, Revised Statutes, 1879, section 3984, there can be no doubt that the attempted disposition of the property of the testator was void as being a testamentary disposition of that property. 1 Woerner's American Law of Administration, pp. 115, 126, 127.

II. Again, even a valid *donatio mortis causa* has no validity as against the claims of creditors. On this point the author already cited says: "It is apparent that the disposition of property *causa mortis* is in some respects identical with testamentary disposition, being

ambulatory or revocable, conditioned or contingent, upon the death of the donor, *and liable for his debts.*" Elsewhere he says: "Like gifts *inter vivos* and legacies, gifts *causa mortis* are subject to defeasance in favor of the donor's creditors, because as against them one cannot give away his property. Donees *causa mortis* take their title to the property subject to the contingent right of the administrator to reclaim it, and are bound to have it forthcoming when required for the payment of debts."

III.   Nor would such a gift be valid if made, according to the theory of the plaintiff, with a view to deprive the widow of her dower in the personalty. *Straat v. O'Neil*, 84 Mo. 68; 1 Woerner's American Law of Administration, 127, 128.

IV.   In cases of this sort, all questions regarding the fact of delivery as well of the capacity in which the person who receives the property holds it, are for determination by the jury, just as other questions of fact in actions of law.   *Hunt v. Hunt*, 119 Mass. 474; *Clough v. Clough*, 117 Mass. 85; *Jones' Adm'r v. Deyer*, 16 Ala. 221, and other cases.

V.   And there can be no question but that the court below did right in ordering the public administrator to be made a party defendant, when such order was applied for by the bank.

VI.   Nor is there any doubt that the public administrator had authority under the statute to take charge of the estate of the decedent, and, besides, his right to thus take charge of an estate cannot be questioned collaterally.   *Wetzell v. Waters*, 18 Mo. 396; 1 Woerner's American Law of Administration, 397.

VII.   No error occurred in rejecting the testimony of the plaintiff as to the contract made between himself and the decedent.   This was as far as the ruling complained of went, and it properly went that far.   Had

the plaintiff desired to testify as to any special matter apart from the contract of bailment, he should have signified his desire in this regard.

There is no error in the record, and the judgment should be affirmed.    All concur.