(16 Misc. Rep. 174.)

## In re HALL'S ESTATE.

(Surrogate's Court, Cattaraugus County. February, 1896.)

1. GIFT CAUSA MORTIS—MENTAL CAPACITY OF DONOR.

Evidence that a donor causa mortis, though of advanced age and suffering from cancer, answered all questions intelligently, made known her wants, and conversed clearly in regard to relatives and neighbors, and gave specific directions as to the disposition of some of her personalty, sufficiently shows mental capacity.

2. SAME—CERTIFICATES OF DEPOSIT.

A certificate of deposit is a proper subject of gift causa mortis.

3. SAME—DELIVERY TO THIRD PERSON.

On an issue as to the validity of a gift causa mortis of certificates of deposit, it appeared that decedent had for some time intended to dispose of the certificates for missionary purposes, and a witness testified that, four days before her death, decedent told her where some papers (the certificates) were hidden, under a bureau, and stated that she wanted to give them to Mrs. T. to take care of; that witness delivered the papers to Mrs. T., in decedent's presence; and that decedent then stated that they were for the missionaries. Mrs. T. testified that decedent told her to divide them equally between the home and foreign mission boards and the Bible society, and that she took the certificates away with her; and it was shown that on the next day Mrs. T., took them back to decedent, who again took possession for the sole purpose of indorsing them by making her mark, and redelivered them to Mrs. T., and that they were not cashed or paid to the beneficiaries until after the donor's death. Held, that there was a valid delivery of the gift.

Judicial settlement of the accounts of the administrator of the estate of Sophia Hall, deceased.

W. R. Pinder, for administrator.

Hudson Ansley, for contestant.

DAVIE, S. Sophia Hall died intestate August 15, 1895, leaving, her surviving, her husband, but no other relatives or next of kin. The husband died intestate soon after, leaving, him surviving, one son, the administrator, and two daughters, one of whom is the contestant. Shortly prior to her death the decedent was the owner of certain funds on deposit in two banks; such deposits being evidenced by the usual certificates, and amounting, in all, to the sum of $1,350. The administrator does not charge himself with, nor account for, these certificates, and the objections filed relate solely to such omission. It is claimed on the part of the administrator that the decedent gave these certificates away shortly prior to her death, while it is urged on behalf of the contestant that at the time of the alleged gift the decedent did not possess the requisite mental capacity to make a gift, that the funds represented by such certificates be-

long to the estate, and that it was the duty of the administrator to resort to proper methods for recovering the same, and, having failed so to do, he is personally liable as for a devastavit. This being the nature of the controversy, it is entirely apparent at the outset that the administrator cannot be charged personally with these funds, unless he has failed to exercise the diligence required by law of administrators in the management of estates, and that in consequence of such neglect the estate has sustained loss. This leads to the inquiry, first, as to the degree of care and diligence required of representatives in their efforts to cóllect demands due, or to recover the possession of property belonging to the estate. It has been asserted, as a general proposition, that, in the management of the business of the estate, executors and administrators are bound to act in good faith, and to exercise such skill, prudence, and diligence as men ordinarily bestow upon their own affairs of like nature. 8 Am. & Eng. Enc. Law, p. 347; McCabe v. Fowler, 84 N. Y. 314; King v. Talbot, 40 N. Y. 76. They may be guilty of devastavit, not only in consequence of direct acts of abuse or maladministration, but by culpable negligence in the management of their estates. Schultz v. Pulver, 11 Wend. 363; Harrington v. Keteltas, 92 N. Y. 40. It is quite apparent that the funds in question could not have been recovered except by an action, but that fact itself does not relieve the administrator. If, however, an examination of all the facts discloses reasonable grounds for considering that such legal steps would have been entirely ineffectual, then such failure on the part of the administrator, acting in good faith, does not render him liable. Clack v. Holland, 19 Beav. 262–271; O'Connor v. Gifford, 117 N. Y. 275, 22 N. E. 1036. If the decedent parted with the title to these funds at all, it was by way of gift causa mortis; and it is claimed by the contestant that, at the time of the transaction, decedent had become so enfeebled mentally, in consequence of her physical infirmities, as to be incapable of transacting business, and that the transaction itself lacked some of the essential features of a gift of that character. In order to make a valid gift causa mortis, there must, of course, be a donor possessing requisite mental capacity, and in apprehension of impending dissolution; property, the title to which is susceptible of being transferred by gift,—the words of gift indicating an intention to pass title; coupled with a delivery, and an acceptance on the part of the donee. The policy of the law does not favor gifts of this character. 8 Am. & Eng. Enc. Law, p. 1348, note. Such gifts are not favored by the courts, and their range should not be extended. Bliss v. Fosdick, 86 Hun, 162, 33 N. Y. Supp. 317. They are necessarily open to the objection of uncertainty, and great strictness and clear proof are therefore necessary to establish them, and they can only be upheld where the intention of the donor is clear and definite, and such intent is fully carried out by execution. Harris v. Clark, 3 N. Y. 93–121; Grey v. Grey, 47 N. Y. 552; Grymes v. Hone, 49 N. Y. 17. But the rule is not carried to the extent of holding that the presumption of law is against such gifts. Lewis v. Merritt, 113 N. Y. 390, 21 N. E. 141. It will be well to have these general propositions in mind, in examining the evidence in this case.

Did decedent possess the requisite mental capacity at the time of making this gift? It was conceded on the submission of this case that, if decedent possessed testamentary capacity, she was competent to make a gift causa mortis. The grade of mental ability required to make a testamentary disposition of property is quite clearly defined. One capable of comprehending the condition of his property, and his relations to those who are the natural objects of his bounty, and able to collect and retain in mind, without prompting, the elements of his business, possesses testamentary capacity. Van Guysling v. Van Kuren, 35 N. Y. 70. Decedent was a woman of somewhat advanced age. During the last six months of her life she was afflicted with cancer of the liver. The transaction in question occurred on Sunday afternoon and on Monday evening, and decedent died the following Wednesday morning. Several witnesses who were with her more or less during her last days were examined quite fully as to her condition. These witnesses detail various conversations with her showing undoubted intelligence. On Sunday Mrs. Trippe, the wife of decedent's pastor, called to see her. Decedent said she was glad to see her, and spoke of feeling better than she did the day before. She asked if Mrs. Trippe's husband was at home, and when he would be. She spoke of a box and a letter she had received from her stepdaughter, and wished the box brought and the letter read to her. She examined the contents of the box, and told Mrs. Trippe of her desire to present her with a resurrection plant. She talked of her stepdaughter, Mary Cowles, and of her kindness to decedent. She told Mrs. Trippe of a small gold piece that she desired to give to Mrs. Trippe's child, and conversed on the subject of her property, as more particularly hereafter referred to. The witness Louisa Ainsworth watched with decedent on Sunday night. She says she conversed with her, and that she asked for what she wanted. She asked for a pocket handkerchief, and, on one being brought, said, "No; not that one; a pink-bordered one." As she was being moved in bed, near morning, her purse dropped down by the bed, and she spoke of it, and asked the witness to pick it up and count the money, and put the purse under her pillow. She inquired how much there was in the purse, and, on being told $2.50, said that was right. The witness Fannie Ainsworth was with the decedent during the period in question, and spoke of conversations with her, all indicative of reason and understanding. The attending physician visited her on the day before her death, and conversed with her, and he testified: "She answered my questions in a perfectly sane manner,—as a sane person would. I didn't think she was other than perfectly sane." I have referred to but a small portion of the evidence bearing upon this question, but a careful consideration of all the testimony irresistibly leads to the conclusion that the decedent, at the time in question, possessed testamentary capacity. It appears inferentially, though quite satisfactorily, that decedent had for some time entertained the intention of making the disposition of the certificates which it is claimed she did make; that such disposition was in accordance with a design long cherished by her. The witness Jennie Kelsey testified that she was at the dece-

dent's residence about the 4th of August, 1895, just before she was confined to her bed, and that decedent (quoting from her testimony) "had some papers to sort over and fix up, and so she took them and went to work; and I saw she was getting very tired, and I tried to persuade her to lie down awhile, and she said it was probably the last work she would have to do; and she went out to dinner, and came back, and went to work, and she arranged them and put them in a pan, and told me to put them in another room, under the bureau." The witness did so. Fannie Ainsworth testified that she was with decedent on Sunday before her death, and that decedent told her of some papers that were in a pan under the bureau in her room. "She said that she wanted to give them to Mrs. Trippe to take care of. She requested me to be there with Mrs. Trippe, and see that she had them and took them away with her. After Mrs. Trippe had gone, she asked me if Mrs. Trippe took all the papers. I told her she did,—all that were there. She told me to tell Mrs. Trippe to divide it equally between the home mission and the foreign mission and the Bible society. She said they were certificates,— money that she and Mr. Cowles [her former husband] had saved for the missionaries." This witness also testified that she gave the papers to Mrs. Trippe in decedent's presence, and at her bedside, and that decedent said they were for the missionaries. The witness Sarah Trippe testified that she visited decedent on Sunday, and that she (decedent) asked Miss Ainsworth to bring out the papers, which was done; and witness, at the request of decedent, figured them up, saying they amounted to $1,350, and decedent said that was right. Witness then asked if she wished her to take the papers with her, and decedent said, "Yes;" and, quoting from her evidence:

"I asked her what proportion she wished us to give to the societies. Before this she remarked like this: 'During Mr. Cowles' lifetime, we arranged together that eventually this money should go to the boards, and after Mr. Hall and I were married there was the same understanding between us,— that the money should go to the boards.' I asked her what boards, and she said the home mission board, the foreign mission board, and the Bible society. I carried the papers away with me."

The decedent was a Christian woman, and a member of the Presbyterian Church. Her first husband was a minister of the same denomination. Her last husband, Mr. Hall, was also a minister of the same denomination, and for many years engaged in missionary work. So it is entirely obvious that the decedent's associations and surroundings for many years had been of such a character as to originate testamentary intentions in harmony with the disposition claimed to have been made by her of her small estate. These certificates were proper subjects of a gift causa mortis. Under the law, as it now stands, all kinds of personal property, with very few exceptions, may be the subject of such a gift, whether the property be corporeal or incorporeal. 8 Am. & Eng. Enc. Law, p. 1342. Bills, bonds, and promissory notes, and all other evidences of debt, although payable to order, and not indorsed, may be so given. Id. p. 1343. In Walsh v. Sexton, 55 Barb. 251, it was held that a delivery of certificates of stock is good as a gift causa mortis, without an assign-

ment, or without a completed transfer of the legal title. This authority was cited and applied in Grymes v. Hone, supra. This transaction having taken place in view of the decedent's approaching dissolution, it is clear that all the essential conditions existed for making a valid gift causa mortis.

This brings us to a consideration of the remaining question,—as to whether or not decedent's intentions were effectuated by such a delivery of the certificates as the law requires to complete a gift of this character. The subject of a gift causa mortis must be delivered, or the gift is not valid. 8 Am. & Eng. Enc. Law, p. 1347. There must be some act done to change the possession from the donor to the donee. The donee, or some one for him, must not only take, but must retain, possession until the death of the donor. If it comes again into the possession of the donor, the presumption is that the gift is revoked. Cutting v. Gilman, 41 N. H. 147; Craig v. Craig, 3 Barb. Ch. 76; Emery v. Clough, 63 N. H. 552, 4 Atl. 796. These certificates were delivered by Mrs. Trippe to her husband, who went to decedent's residence on Monday evening in company with his wife, where the certificates were indorsed by decedent, she making her mark to her name written on the back of each; such mark being witnessed by Miss Ainsworth and by Mr. Hall, the administrator. At no time did decedent have either of the certificates in her possession, except for the purpose of indorsement, after they were delivered to Mrs. Trippe. Mr. Trippe took them away with him after such indorsement. But the money represented by them was not drawn from the banks, or paid over to the beneficiaries, until after decedent's death. It has been distinctly held in many cases that the delivery may be made to a third party for the donee, and that such delivery will be sufficient, although the donor dies before the intermediary hands over the property. Drury v. Smith, 1 P. Wms. 404; Michener v. Dale, 23 Pa. St. 59; Dresser v. Dresser, 46 Me. 48; Jones v. Deyer, 16 Ala. 221. In Grymes v. Hone, above cited, the defendant's testator, being the owner of 120 shares of bank stock included in one certificate, made an assignment of 20 shares to the plaintiff. This he handed to his wife, to be kept by her and delivered to the plaintiff upon his death. The court held that this constituted a valid gift causa mortis; that the defendant (the wife) was the trustee for the plaintiff, by operation of law. In view of all the facts disclosed by the evidence, in the light of the various authorities cited, I am impressed with the belief that the administrator has furnished a complete and satisfactory answer to the objections filed to his account; that an action brought by him to recover these funds would have been entirely ineffectual; that he has not only acted in good faith, but exercised good judgment, in not involving the estate in litigation. A decree will be accordingly entered settling the accounts of the administrator as filed, and dismissing the objection to the same.

Ordered accordingly.